UNITED STATES OF AMERICA,
Intervenor below, Appellant,

*vs.*

LOFT, INCORPORATED, a Delaware Corporation,
Complainant below, Appellee,

CHARLES G. GUTH, THE GRACE COMPANY, INC., OF DELAWARE, a corporation of the State of Delaware, and PEPSI-COLA COMPANY, a corporation of the State of Delaware,
Defendants below, Appellees.

*Supreme Court, On Appeal, April 18, 1941.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Samuel O. Clark, Jr.,* Assistant Attorney-General, *Sewell Key, J. Lewis Monarch, Norman D. Keller,* and *Frederic G. Rita,* Special Assistants to the Attorney-General, and *Stewart Lynch,* U. S. District Attorney of the District of Delaware, for appellant, United States.

*Clarence A. Southerland* and *David F. Anderson*, (*David L. Podell* and *Hays, Podell & Shulman,* all of New York City, and *Southerland, Berl, Potter & Leahy,* of Wilmington, of counsel), for appellee, Loft, Inc.

LAYTON, Chief Justice, delivering the opinion of the court:

On December 30, 1935, Loft, Incorporated, hereafter referred to as Loft, filed its bill of complaint in the Court of Chancery seeking, *inter alia,* to impress a trust on certain shares of stock of Pepsi-Cola Company standing in the name of Charles G. Guth and The Grace Company. The bill prayed for the issuance of a writ of sequestration for the seizure of all of the shares of Pepsi-Cola and Loft standing in the name of Guth, in order to compel his appearance, he being a non-resident. The Chancellor appointed George R. McDougall sequestrator with authority "to seize all of the said shares of stock and all the rights thereto belonging or appertaining * * * in order to compel the appearance of said defendant Charles G. Guth in this court * * *."

Seizure was made, *inter alia,* of 99,709 shares of Pepsi-Cola stock registered in the name of Charles G. Guth. In December, 1936, while the suit was pending, a dividend of $2 a share on the Pepsi-Cola stock was declared and a check representing the aggregate of the dividends on the shares seized was drawn to Guth's order. Subsequently, the Chancellor entered an order directing the dividends, amounting to $199,418, to be deposited to the credit of the sequestrator in a designated bank in a special account, with the direction that none of the money should be withdrawn except upon the order of the Chancellor.

On November 30, 1938, the sequestrator received a notice of a proposed assessment from the Commissioner of Internal Revenue stating that a review of his income tax liability for the year ending December 31, 1936, disclosed

a deficiency of income of $95,987.52, and a penalty of $23,-996.88. The notice was duly protested. The United States prayed, and was granted, leave to intervene in the pending action to assert the liability of the sequestrator to pay to the United States taxes alleged to be due in respect of the stated income received by him for the taxable year, 1936. Loft moved to dismiss the government's petition; and, in an opinion reported *ante p.* 87, 13 *A.* 2*d* 706, in which the applicable statutes were quoted and the authorities discussed, the Chancellor granted the motion. This appeal followed.

*Section* 161 of the *Revenue Act of* 1936, *c.* 690, 49 *Stat.* 1648, 26 *U. S. C. A. Int. Rev. Code,* § 161, provides, *inter alia,* that the income taxes imposed on individuals shall apply to the income of estates or of any kind of property held in trust, including income accumulated in trust for the benefit of unascertained persons. The Government contends that the sequestrator is a fiduciary under *Sec.* 1001 (*a*) (6) of the *Revenue Act,* 26 *U. S. C. A. Int. Rev. Code,* § 3797 (*a*) (6), defining a fiduciary as meaning a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in a fiduciary capacity for any person; and that, as the sequestrator held the shares of stock and the accumulated income thereof for the true owner who could not be ascertained until determined by the final decree of the court, he, the sequestrator, was a trustee for the benefit of an unascertained person and, as such, was taxable for the income derived from the trust property in the year 1936.

It was incumbent on the Government to show that, under the statute, the dividends on the Pepsi-Cola shares in the hands of the sequestrator constituted income of property held in trust and accumulated for the benefit of unascertained persons. The question is naturally divisible, and first it is to be decided whether the Pepsi-Cola shares were property held in trust. This requires an examination of the

statute. (*Sec.* 4374, *Rev. Code of Delaware*, 1935) under the authority of which the sequestrator was appointed.

The sole primary purpose of the statute was to compel the appearance of a non-resident defendant in an action in the Court of Chancery. The Chancellor, under the statute, is empowered to enter an order directing appearance, and to direct service of the order by mail or otherwise, or by publication; and he is further empowered to compel appearance by the seizure of all or any part of the defendant's property within the jurisdiction of the court, and to sell the property to satisfy any decree unless security is given. There is no mention of the word, "sequestrator" in the statute, nor is the word defined in any rule of court. It was not the purpose of the Legislature to establish and define an office; rather it was to confer on the Chancellor wide authority for the compulsion of appearance and the satisfaction of decrees, leaving to him to devise, in the particular case, the method best suited to accomplish the purpose.

There seems to be no compelling reason for the appointment of any person as a sequestrator, or to give that name to the person appointed to make the seizure. The sheriff, who ordinarily executes the writs of the Court of Chancery, could as well have been designated to seize and hold the shares of stock and any dividend paid on them; or the shares and the dividends could have been held in the name of the court. The word, "sequestrator," is merely a convenient designation for the person selected to carry out the court's order; and whatever the appellation given, a sequestrator is merely the court's auxiliary, its executive agent to hold possession of the property seized under the direction of the court for the purpose of accomplishing the stautory purposes. When so seized the property is *in custodia legis*. Whether, in a particular case, a custodian of property under a court order may have the quality of a trustee, need not be considered. It is sufficient to say that the sequestrator here had no active duties to perform, no

title to the property, no right of disposal, nor even the right to vote the shares; and by express direction of the court, he was forbidden to touch the bank account except upon the Chancellor's order. The sequestrator was no more a trustee than is a sheriff, constable or other officer who, under the authority of a writ of execution or order of court, makes a seizure and detention of property. The Congress well knew that property is constantly being thus seized and detained; and if it had been its purpose, disregarding considerations of fairness, to attempt to impose generally on the executive arms of the courts the duty as fiduciaries to make returns of income received on property in their possession, that intention would have been expressed in apt language. As it is it is stretching the conception of a fiduciary to an unwarranted degree to hold the sequestrator here as a person acting in a fiduciary capacity.

The regulations of the Treasury Department defining the term "trust" would seem to be inconsistent with the position the Government takes. *Art.* 1001-3, headed, "Association Distinguished from Trust," declares that the term trust as used in the *Revenue Act,* "refers to any ordinary trust, namely, one created by will or by declaration of the trustees or grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under the ordinary rules applied in chancery and probate courts." By *Art.* 1001-9, headed "Fiduciary," it is explained that "fiduciary is a term which applies to persons that occupy positions of peculiar confidence toward others, such as trustees, executors and administrators"; and that "a fiduciary for income tax purposes is a person who holds in trust an estate to which another has the beneficial title or in which another has a beneficial interest, or receives and controls income of another, as in the case of receivers." *Art.* 1001-10, headed, "Fiduciary Distinguished from Agent," states that "there may be a fiduciary relationship between an agent and a principal, but the

word 'agent' does not denote a fiduciary." *Meeker v. Durey,* (2 *Cir.*) 92 *F.* 2d 607, is an apposite and illustrative case.

In the circumstances disclosed we do not agree with the Government's contention that while the sequestrator's powers were controlled by the order of his appointment and by any subsequent orders of the court, his powers can be said to have been controlled in no broader sense than those of any trustee are controlled by the indenture of trust under which he holds.

*Ferguson v. Forstmann,* (3 *Cir.*) 25 *F.* 2d 47, and *Hart v. Commissioner,* (1 *Cir.*) 54 *F.* 2d 848, are relied on by the Government in support of the contention that the dividends in the hands of the sequestrator was income accumulated in trust for the benefit of an unascertained person. The case first cited seems to be in point; the second case may, perhaps, be distinguished on the facts. But the litigation here was not concerned with an unascertained person in any true and proper sense. The suit, in effect, was one to determine the ownership of the shares of stock as between known and identified persons. *Benton Wilson v. Commissioner,* 33 *B. T. A.* 649; *Commissioner v. Owens,* (10 *Cir.*) 78 *F.* 2d 768. The statute, in its reference to unascertained persons, means those whose identification depends on future contingencies rather than a correct understanding of the application of the law to existing facts. *DeBrabant v. Commissioner,* (2 *Cir.*) 90 *F.* 2d 433; *Meeker v. Durey, supra.*

We are of opinion that the sequestrator was not a fiduciary within the meaning of the *Revenue Act;* that the property held by him under the Chancellor's order was not property held in trust; and that the dividend on the Pepsi-Cola shares was not income accumulated for the benefit of an unascertained person.

Considerations of. other sections of the *Revenue Act* and applicable Treasury Regulations lend some support to the conclusion reached. *Section* 52 of the *Revenue Act* 26

*U. S. C. A. Int. Rev. Code,* § 52, provides for returns to be made by receivers, trustees in bankruptcy or assignees operating the property or business of a corporation; and by *Art.* 52-2 of the Treasury Regulations, it is declared that a receiver in charge of only a part of the property need not make a return of income. Likewise, by *Section* 142 of the *Act,* 26 *U. S. C. A. Int. Rev. Acts, page* 884, a receiver appointed by authority of law in the possession of part only of the property of an individual is not required to make a return of income; and the applicable Treasury Regulation (*Art.* 142-4) declares that a receiver of only part of the property of an individual or corporation need not render a return of income.

Annual assessment and payment of income taxes are, of course, important elements in the scheme of federal income taxation. *Woolford Realty Co. v. Rose,* 286 *U. S.* 319, 52 *S. Ct.* 568, 76 *L. Ed.* 1128; but under any income tax law, considerations of fairness and justice should compel some exception; and the sections of the *Revenue Act* and the Treasury Regulations relative to receivers of a part only of the property of an individual or corporation recognizes the unreasonableness and unfairness of requiring the filing of two separate returns for the same year, each covering a part only of the income received. See *North American Oil Consolidated v. Burnet,* 286 *U. S.* 417, 52 *S. Ct.* 613, 76 *L. Ed.* 1197.

Assuming that Loft has received, or will receive, the dividend or income, that company must ultimately account for it as income received; but it would be manifestly unjust to tax the income in the hands of the sequestrator without allowing Loft to consolidate the amount with the rest of its earnings for the particular taxable year.

The decree of the court below is sustained.