HARRY SANDS and IRENE SANDS,
Appellants,

*vs.*

LEFCOURT REALTY CORPORATION, a Delaware corporation,
Appellee.

*Supreme Court of Delaware, October 14, 1955.*

*John J. Morris, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for appellants.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: This is a suit in equity by Lefcourt Realty Corporation against Harry Sands, a former director, and his wife. Lefcourt seeks an accounting for alleged illegal profits arising out of corporate transactions, and also other relief.

The Sands are residents of Florida. Shares of Lefcourt stock were seized to compel their appearance. They moved for leave to appear specially and defend on the merits with liability limited to the

value of the seized property. The Vice Chancellor denied the motion. *Del.Ch.*, 113 *A.2d* 428. The Sands appeal.

The question presented is this:

Under the provisions of 10 *Del.C.* § 366(a), authorizing the Court of Chancery to seize property of a non-resident defendant to compel his appearance, may he appear specially to protect the property seized and defend on the merits, without subjecting himself to liability for a personal judgment?

At the time of the seizure, and at the time of the Vice Chancellor's decision, the statute referred to provided as follows:

"(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for three consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause, unless security sufficient to the Court is given to secure the release thereof."

By amendment approved July 1, 1955, 50 *Del.L.Ch.* 379, the last sentence of the quoted section was stricken out and the following substituted:

"Any defendant whose property shall have been so seized and who shall have entered a general appearance in the cause, may upon notice to the plaintiff, petition the Court for an order releasing such property or any part thereof from the seizure. The Court shall release such property unless the plaintiff shall

satisfy the Court that because of other circumstances there is a reasonable possibility that such release may render it substantially less likely that plaintiff will obtain satisfaction of any judgment secured. If such petition shall not be granted, or if no such petition shall be filed, such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause. The Court may at any time release such property or any part thereof upon the giving of sufficient security."

The answer to the question before us turns upon the meaning of the phrase "compel the appearance" in the third sentence of the statute. Does this mean a general appearance and submission to the jurisdiction of the Court over the person of the defendant, or does it also contemplate a limited appearance to defend on the merits, with liability limited to the value of the seized property?

We note first that the type of appearance sought to be entered here is unknown to our practice. The equitable remedy afforded by the quoted section is one analogous to foreign attachment at law. *Cantor v. Sachs,* 18 *Del.Ch.* 359, 162 *A.* 73; *Greene v. Johnston,* 34 *Del.Ch.* 115, 99 *A.2d* 627, 42 *A.L.R.2d* 906. Foreign attachment is governed by statutes originating in colonial times, *Blaustein v. Standard Oil Co.,* 4 *Terry* 449, 43 *Del.* 449, 49 *A.2d* 726, and it has always been the law that the only types of appearance permitted under these statutes are a special appearance to attack the jurisdiction of the court, and a general appearance—that is a submission of the person to the jurisdiction of the court.[1] *Blaustein v. Standard Oil Co.,* 4 *Terry* 516, 521, 43 *Del.* 516, 521, 51 *A.2d* 568; *Kaiser-Frazer Corp. v. Eaton,* 7 *Terry* 509, 46 *Del.* 509, 85 *A.2d* 752. This conclusion necessarily follows from the language of the foreign attachment statutes. For example 10 *Del.C.* § 3526 provides:

"Judgment shall be given for the plaintiff in the attachment the second term after issuing the writ, unless if the action was commenced by writ of foreign attachment, the defendant enters his appearance in the same manner as appearances are entered in cases commenced by summons, * * * ."

1. Without pausing to consider the effect of the new rules upon "special" and "general" appearances, we employ the terms as a matter of convenience.

The Sands concede that the type of appearance they desire to enter could not be allowed at law, because of the wording of the foreign attachment statutes. But they insist, first, that the language of 10 *Del.C.* § 366(a) is not similarly restrictive and may be construed as contemplating a limited appearance as well as a general appearance. Secondly, they contend that such an appearance is recognized by eminent authority. Finally, they say that a sound public policy dictates the adoption by the Court of Chancery of the limited-appearance rule.

Let us examine these arguments.

Historically, mesne attachment in equity was unknown to Delaware statutes or practice. In *Skinner v. Educational Pictures Securities Corp.,* 14 *Del.Ch.* 417, 129 *A.* 857, 860, the plaintiff, seeking to compel the appearance of a non-resident defendant, moved for a commission of sequestration, writ of attachment, or other process to hold the defendant's property until he should have appeared in the suit. The Chancellor denied the application and said:

> "The difficulty with such a procedure in the instant case is that the law has provided for no writ or process for its accomplishment. The writ of foreign attachment supplies such a procedure in law actions. But no similar remedy has been introduced by our statutes into the Chancery practice of this state. Nor is any such remedy, so far as I am advised, to be found in the ancient English Chancery practice, from which our own is derived. There would seem to be no doubt that it would be competent for the legislative power of the state to confer upon this court a power to proceed against non-residents after the manner of foreign attachment at law. But it has not as yet done so."

The *Skinner* case was decided in 1925. At the next session of the General Assembly, the forerunner of § 366(a) was adopted. 35 *Del.L.Ch.* 217. It is, we think, an accepted fact that the occasion for the statute was the decision in the *Skinner* case, and the belief of the legislature that it was desirable to confer power upon the Court of Chancery "to proceed against non-residents after the manner

of foreign attachment at law." In so doing, it would be natural for the General Assembly to borrow from the law of foreign attachment the concept that upon seizure by attachment of the property of a non-resident defendant to compel his appearance, he must either attack the jurisdiction of the court or submit himself to that jurisdiction if he wishes to avoid the condemnation of that property. Why should there be one rule at law and another in equity in this important matter?

The Sands point to the interpretation of the word "property" in § 366(a) as including certain kinds of property, *e. g.,* equitable interests, that may be seized in equity but not at law. *Weinress v. Bland,* 31 *Del.Ch.* 269, 71 *A.2d* 59; *Greene v. Johnston, supra.* It is said that if the word "property" is to be given a meaning wider in § 366(a) than similar language in the statutes regulating attachment at law, the word "appearance" in § 366(a) should also be given a broader meaning. This is a *non sequitur.* The wider scope of equitable seizure flows primarily from the wider inherent powers of the Court of Chancery over property not attachable at law. *Greene v. Johnston, supra.*

The question before us turns upon the primary purpose of the statute—the end it sought to achieve. In *Loft, Inc. v. Guth,* 25 *Del.Ch.* 363, 19 *A.2d* 721, 722, the Supreme Court said:

"The sole primary purpose of the statute was to compel the appearance of a non-resident defendant in an action in the Court of Chancery. The Chancellor, under the statute, is empowered to enter an order directing appearance, and to direct service of the order by mail or otherwise, or by publication; and he is further empowered to compel appearance by the seizure of all or any part of the defendant's property within the jurisdiction of the court, and to sell the property to satisfy any decree unless security is given."

It is hard to see how this "primary purpose" of the statute could be satisfied by the entry of a special appearance of any kind. Why attempt to "compel" a defendant to appear specially for a limited purpose? Jurisdiction over the property has already been achieved

by seizure; an enlarged jurisdiction is thereby sought to be compelled. The concept of compulsion suggests that the enlarged jurisdiction is complete jurisdiction, that is, jurisdiction over the person. And the ordinary meaning of the word "appearance" in law imports such submission. 1 Woolley, *Delaware Practice,* Sec. 223; 1 *Bou.Law Dict., Rawle's Third Revision,* p. 212, 1 Daniel, *Chancery Pleading and Practice,* 536. We see no reason to ascribe to it a different meaning in the provisions of § 366(a).

The recent amendment to § 366(a) seems to put the question beyond doubt. It is quoted above. Upon the entry of a general appearance by a non-resident defendant whose property has been seized, the court is required to release the property unless the plaintiff can show reasonable possibility of failing to obtain satisfaction of any judgment. The philosophy embodied in this statute is clear. Since the entry of a general appearance is the condition of the release of the seized property, the object of seizure is to compel that kind of appearance.

It is said that the use in the amendment of the specific phrase "general appearance" indicates that the word "appearance" in the preceding part of the statute has a different and wider meaning. Any force in this argument, based on a mere verbal distinction, is clearly outweighed by the underlying intent and policy of the statute, which we have above stated. We think that the amendment simply made explicit that which before had been implicit, *i. e.,* the appearance sought to be compelled is a general appearance. We are of opinion that the language and intent of § 366(a), considered in the light of its historical background, does not permit the type of limited appearance here sought to be made.

This conclusion renders unnecessary any extended discussion of authorities in other jurisdictions. It is quite true that the "limited-appearance rule" has received approval in Massachusetts, in Maryland, and in the Sixth Circuit. See *Cheshire National Bank v. Jaynes,* 224 *Mass.* 14, 112 *N.E.* 500; *Miller Bros. Co. v. State,* 201 *Md.* 535, 95 *A.2d* 286; *Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co.,* 6 *Cir.,* 285 *F.* 214. The Restatement has adopted the

rule. *Restatement of the Law of Judgments, Sec.* 40. The cases cited involve attachments at law, and the statutory provisions (particularly in Massachusetts) appear to be sufficiently different from ours to make them distinguishable. The rule of the Restatement is obviously intended to apply to all cases of mesne attachment of a non-resident's property, whether in law or equity—a result which the Sands concede could not be reached in Delaware.

Moreover, there is authority to the contrary. See *Burg v. Winquist, Sup.,* 124 *N.Y.S.2d* 133; *State, ex rel. Methodist Old People's Home v. Crawford,* 159 *Or.* 377, 80 *P.2d* 873. And in the federal courts, in cases arising under § 1655 of the Judicial Code, relating to actions to enforce liens on property of non-residents, there has developed a split of authority on the limited-appearance rule. Decisions refusing to apply it are: *Bede Steam Shipping Co. v. New York Trust Co., (D.C.)* 54 *F.2d* 658; *Campbell v. Murdock, (D.C.)* 90 *F.Supp.* 297; *Anderson v. Benson, (D.C.)* 117 *F.Supp.* 765. The contrary view is adopted by the Fourth Circuit Court of Appeals in *McQuillen v. National Cash Register Co.,* 112 *F.2d* 877.

As above stated, we see no occasion for an analysis of these decisions, since we think that for the reasons above stated the clear meaning and intent of our statute precludes the adoption in Delaware of the limited-appearance rule.

The argument from public policy, earnestly pressed by the Sands, meets immediate difficulty. Public policy is made primarily by the legislature. In this case it is admitted that in cases at law the public policy announced by the legislature forbids the adoption of the limited-appearance rule. In the subjection of non-residents to the jurisdiction of our courts there can hardly be one public policy in the Superior Court and a contrary one in the Court of Chancery. It is said that litigation in the Court of Chancery is attended by circumstances that render undesirable the use of mesne attachment to compel a general appearance in that court, because of the widespread holding of shares of stock in corporations organized in Delaware. In practice, it is said, most attachments of stock originate in equity, and the owners of such stock are compelled to

try their cases in a foreign jurisdiction or forfeit the seized property. All this may be so, but it is beside the point. The legislative policy is clear. It does not depend upon the comparative numbers of attachment suits in the two courts. And we may doubt whether the supposed unfairness of the result—the trial of cases in a foreign jurisdiction—really exists. A plaintiff's convenience in the choice of a forum must be considered as well as the defendant's. And in modern times the enforced appearance of non-resident defendants is certainly not unusual. The statutes permitting substituted service on the operators of non-resident motor vehicles in case of local accidents supply a familiar example. We see no reason to strain the language and intent of § 366(a) in order to avoid a supposed unfairness the existence of which is at least doubtful.

The judgment of the Court of Chancery is affirmed.