**HUGHES TOOL COMPANY, a Delaware corporation, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, INC., a Delaware corporation, and Noah Dietrich, Defendants.**

Court of Chancery of Delaware, New Castle.

April 18, 1972.

S. Samuel Arsht, Lewis S. Black, Jr., and Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Davis & Cox, New York City, for plaintiff.

Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, and Steptoe & Johnson, Washington, D. C., for defendant Noah Dietrich.

David F. Anderson and E. Dickenson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, for defendant Fawcett Publications, Inc.

MARVEL, Vice Chancellor:

The complaint herein alleges that the non-resident defendant Dietrich served for many years prior to 1957 as an officer of plaintiff, in which position he came to enjoy the trust and confidence of Howard R. Hughes, the sole stockholder of such company.

The complaint goes on to allege that on August 1, 1959, Mr. Dietrich and Mr. Hughes entered into an agreement under the terms of which a pending lawsuit brought by Mr. Dietrich against Mr. Hughes was settled, Hughes Tool Company being named as a third party beneficiary of such agreement. However, such agreement contained several covenants, including an undertaking on the part of Mr. Dietrich not to disclose any information (whether laudatory or defamatory concerning Mr. Hughes or his interests) acquired by Mr. Dietrich in the course of his employment by Hughes, Hughes Tool Company, Trans World Airlines, Inc., or any Hughes affiliate, or to permit the disclosure of any biographical or historical information [1] concerning Mr. Hughes or his interests without the permission of Hughes Tool Company, and, where applicable, of Mr. Hughes.

In consideration of such undertaking on the part of Mr. Dietrich, Hughes Tool Company paid Mr. Dietrich the sum of $100,000, and further agreed to pay him the additional sum of $594,000 in annual installments of $31,260 each over a period of nineteen years commencing February 15, 1960. As of February 18, 1972, the date of the filing of the complaint, Hughes Tool Company had made total payments to Mr. Dietrich of $506,380 under the provisions of the aforesaid agreement.

The relief sought by plaintiff is an accounting by Mr. Dietrich and the defendant Fawcett, which has allegedly agreed to publish the former's reminiscences about Howard Hughes in apparent violation of his contractual obligation of August 1, 1959, and an order declaring that all profits derived by defendants from the publication of the so-called Dietrich manuscript concerning Hughes be impressed with a trust in favor of plaintiff. Also sought is mandatory injunctive relief in the form of an order requiring defendant to assign the so-called Dietrich manuscript and its copyright to plaintiff.

On February 18, 1972, plaintiff moved for the entry of an order of sequestration for the seizure within the State of Delaware of obligations, rights, debts, or credits, due or to become due to Mr. Dietrich under the agreement entered into between Mr. Dietrich and Hughes Tool Company, dated August 1, 1959, as well as under the terms of an agreement between Mr. Dietrich and the defendant Fawcett Publications, Inc., having to do with the publication of the former's biography of Howard Hughes, and an appropriate order was entered. The amount due or to become due to Dietrich under the first agreement was stated in an accompanying affidavit to be $187,560, while the amount due or to become due under the second agreement was stated to be unknown.

By way of answer to the sequestrator's notice, Hughes Tool Company reported on March 1, 1972 that its records indicated that out of each annual payment of $31,260 due from it to Mr. Dietrich each February 15 until 1978, under its August 1959 agreement with Mr. Dietrich, the sum of $7,815.00 had been assigned to a Mr. Arthur J. Crowley, and the balance to Mrs. Carol Dietrich.

The response of Fawcett Publications, Inc. to the notice of sequestration reported the sum of $10,000 [2] due Mr. Dietrich on March 3, 1972, in the form of a royalty payment due on his Hughes' biography, as well as the expected payments of other sums in the future under the terms of such royalty agreement.

Such $10,000 royalty having been sequestered by the Court appointed sequestrator, followed by the entrance of an appearance on the part of Mr. Dietrich, the latter has moved for an order releasing such property from sequestration on the ground that

---

1. On July 2, 1965, Mr. Hughes assigned to Rosemont Industries, Inc. the exclusive rights to his biographical data.

2. This same royalty has been seized in the companion case of Rosemont Industries, Inc. v. Fawcett Publications, Inc., Ct. of Ch., Del., C.A. 3842.

there is no reasonable possibility that such release may render it substantially less likely that plaintiff will obtain satisfaction of any judgment secured as a result of this action, 10 Del.C. § 366.

In his affidavit in support of his motion Mr. Dietrich avers that his real and personal assets exceed his liabilities by approximately $300,000, ". . . . exclusive of the expected royalties on the book 'Howard The Amazing Mr. Hughes,'" the claimed rights to which lie, of course, at the heart of this litigation. He includes in such computation a contingent liability in the form of a judgment against him of some $35,000, in a case which is on appeal against the judgment creditor, Pacific Indemnity Company.

An opposing affidavit filed on behalf of plaintiff avers that while Mr. Dietrich claims to have a net worth of $300,000, the relief sought by plaintiff, if fully realized, would result in the entry of a judgment against Mr. Dietrich in an amount in excess of $500,000, that the beneficial ownership of the Hughes biography, the seizure of royalties from which are the subject of this motion, is one of the basic matters in issue in this litigation, and that part of Mr. Dietrich's net worth may be an alleged $65,000 advance of royalties by the defendant Fawcett. Also questioned by plaintiff is Mr. Dietrich's estimate of the amount of the judgment against him held by the Pacific Indemnity Company, which, it is claimed, totals at least $175,773, as opposed to the $35,000 estimate made by Mr. Dietrich. Finally, it is averred in the affidavit filed on behalf of plaintiff that its investigation failed to disclose " * * * the existence of any assets standing in the name of Dietrich or in the name of Noah Dietrich and Associates, or in the name of any other corporation, partnership or other entity in which Dietrich is known to be a principal * * *" other than a residence which allegedly is encumbered by a tax lien in the amount of $9,278.40.

■ The primary purpose of 10 Del.C. § 366 is to compel the appearance in this Court of a non-resident having a seizable interest with a situs in Delaware, Loft, Inc. v. Guth, 25 Del.Ch. 363, 19 A.2d 721, at least where sale of the sequestered property is necessary to render effectual the relief which the complaint. seeks, Lefcourt Realty Corp. v. Sands, 35 Del.Ch. 164, 113 A.2d 428, aff'd 35 Del.Ch. 340, 117 A.2d 365.

Sequestration is most frequently resorted to in suits by stockholders against corporate directors in which recoveries are sought for the benefit of the corporation on the ground of claimed breaches of fiduciary duty on the part of directors. Inasmuch as most managerial non-resident directors of Delaware corporations are stockholders of their own companies, seizure of their stock in the corporation sought to be benefited is normally sought solely to compel their appearance, it being generally recognized by stockholder plaintiffs and their counsel in derivative actions that as a result of the obtaining of a judgment after trial or of a Court approved settlement, there normally is little doubt about the availability of funds to satisfy a judgment against corporate directors, particularly in light of the present terms of 8 Del.C. § 145, which permits, under stated conditions, the indemnification of directors who have acted in good faith.

■ In the case at bar, on the other hand, the basic matters in issue are not concerned with the propriety of the conduct of non-resident directors of a Delaware corporation, but rather with claims against a non-resident based on his alleged violation of a covenant not to disclose information acquired by him as a result of long-term employment by plaintiff, all of the stock of which is owned by Howard Hughes. If plaintiff is successful in this litigation, it will be the beneficiary of a judgment in excess of plaintiff's unitemized inventory of his net assets, not to mention the possible establishing of a trust

in plaintiff's favor in any profits generated as a result of the defendant Fawcett's publication of the so-called Dietrich manuscript of the life of Mr. Hughes. Finally, the monthly payments due Mr. Dietrich from plaintiff under the August 1, 1959 agreement are assigned.

In light of the foregoing, the ruling of this Court in the case of Rudolph et al. v. Shamp, et al., Sept. 7, 1960, Ct. of Ch., C. A. 1282, is persuasive here. In the cited case, the Chancellor noted in disposing of a motion of the defendant Wolf which sought release of his sequestered shares of stock that such movant " * * * does not have substantial assets when viewed in relation to the magnitude of the various claims asserted. His financing of the purchase of the very stock in question shows that he has found it difficult to raise money. His asset picture is certainly not such that a potential creditor would be unconcerned."

In my opinion, plaintiff, on the present record, has carried the burden imposed by 10 Del.C. § 366 in that such record discloses grave doubt concerning Mr. Dietrich's ability ultimately to satisfy plaintiff's claims, if established, in the light of the former's present net asset position and its threatened future deterioration as a result of this and other litigation.

On notice, an appropriate order denying the motion of the defendant Noah Dietrich may be submitted.