**George P. BAKER et al., Plaintiffs,**

v.

**Fidel GÖTZ et al., Defendants.**

**Civ. A. Nos. 4072, 74–99 and 74–145.**

United States District Court,
D. Delaware.

Jan. 14, 1976.

---

240

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs. Morris L. Weisberg, of Blank, Rome, Klaus & Comisky, Philadelphia, Pa., of counsel.

Arthur G. Connolly, and Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for defendants. Saul L. Sherman, of Busby, Rivkin, Sherman, Levy & Rehm, New York City, of counsel.

OPINION

STEEL, Senior District Judge:

Three motions are before the Court. They are directed to substantially identical proceedings in each of the above three cases, hence separate treatment of each of the cases is not required. Civil Action No. 4072 will be treated as typical. One of defendants' motions seeks an order specifically authorizing Jay H. Conner, the sequestrator appointed by this Court in each of the above cases ("federal sequestrator"), to turn over to the defendants "funds" paid to him under the order of his appointment and deposited by him in the Wilmington Trust Company. These "funds" include securities of various kinds in which he has invested the monies which he received pursuant to the authority conferred upon him by the sequestration order and by the defendants.[1] The motion is directed solely to obtaining an order authorizing the federal sequestrator to turn over to defendants "funds" which came into his possession from 1971 to October 28, 1975. Defendants' second motion is for an order dismissing the complaint. A third motion has been filed by plaintiffs for a declaration that the defendants have appeared generally in all cases.

*Defendants' motion for an order authorizing the federal sequestrator to turn over to defendants "funds" on deposit with the Wilmington Trust Company*

While the complaints vary slightly in language, each seeks a money judgment in favor of the plaintiffs, trustees of the Penn Central, a debtor in proceedings for the reorganization under section 77 of the Bankruptcy Act, against each of the defendants, all of whom are non-residents of Delaware. Plaintiffs seek this relief upon the basis of the alleged misappropriation by one of the defendants, Fidel Götz, of $4,000,000 belonging to the Penn Central and held in trust by a "business" trust organized under the laws of the principality of Liechtenstein. The plaintiffs, having been unable to serve the defendants personally, have attempted to compel their appearance by purporting to sequester certain assets which defendants are alleged to own. These assets consisted of notes, warrants and debentures which had been issued by three Delaware corporations, Itel, CBK and Textron. None were physically located in Delaware and none have been physically seized. The purported sequestration was made under an order of this Court dated June 24, 1974[2] (C.A. No. 4072) entered purportedly under 10 Del.C. § 366 and F.R.Civ.P. 4(e) upon the theory that the obligations of the three companies, being obligations of Delaware corporations, had a situs in Delaware and hence were subject to the sequestration in Delaware by the procedures spec-

---

1. Although the motion is not addressed to the point, the defendants also ask that the federal sequestrator be instructed to notify the issuer of the notes, warrants and debentures of the three Delaware corporations, Itel, CBK and Textron, purportedly sequestered by this Court's order, that the sequestration has been vacated. The funds on deposit with the Wilmington Trust Company have derived from these notes, warrants and debentures.

2. The other sequestration orders were dated May 23, 1974 and June 12, 1974.

ified in section 366 which were the equitable equivalent of garnishee process.[3]

Defendants moved to vacate the sequestrations upon the ground, among others, that the securities allegedly sequestered were negotiable instruments and as such could not be validly sequestered under 10 Del.C. § 366 without a physical seizure of the instruments themselves. By opinion dated January 3, 1975, this Court sustained the defendants' position, *Baker v. Götz*, 387 F.Supp. 1381 (D.Del.1975), and on January 7, 1975, an order vacating the sequestration was entered. By its terms and by later proceedings the effectiveness of the order was stayed pending an appeal from the order by plaintiffs. On October 17, 1975, the Court of Appeals, acting unanimously, entered a "Judgment Order" which affirmed the decision of this Court. On December 1 the mandate of affirmance dated November 25, 1975, was received by this Court.

On October 28, 1975, between the dates of the "Judgment Order" of October 17, 1975, and November 25, when its mandate issued, successor trustees of the Penn Central and two other corporations began an action in the Court of Chancery of the State of Delaware *sub nom. Blanchette, et al. v. Fidel Götz, et al.*, Civil Action No. 4919. Named as defendants were the defendants in the present action and others. The relief sought was based upon acts of wrongdoing which in general (although pleaded somewhat differently) are the subject of the present action.

Since all defendants were non-residents of Delaware and plaintiffs were unable to serve them with process, plaintiffs sought and obtained from the Court of Chancery on October 28, 1975, an *ex parte* sequestration order purportedly under 10 Del.C. § 366 which appointed Jay H. Conner sequestrator ("Chancery sequestrator"). He is the same individual who was appointed and is presently acting as federal sequestrator under the order of this Court dated June 24, 1974. Under the order of the Court of Chancery the Chancery sequestrator purported to seize the same notes, warrants and debentures of Itel, CBK and Textron which had been purportedly seized and were held by the federal sequestrator under the June 24, 1974, order of this Court.[4] That order authorized the federal sequestrator not only to seize the specified notes, warrants and debentures, but also "all the rights belonging or appertaining to such property". The order of the Court of Chancery dated October 28, 1975, contained a similar provision.

As of October 28, 1975, the federal sequestrator had on deposit with the Wilmington Trust Company as its agent the assets listed on the asset statement of the Wilmington Trust Company as of October 31, 1975, a photostatic copy of which is attached.[5] These consisted of a small amount of uninvested cash and securities in which monies received by the federal sequestrator from Itel, CBK and Textron or some of them under the federal sequestration order had been invested. In addition, the federal sequestrator was on October 28, 1975, holding $11,250

---

**3.** Earlier plaintiffs had attempted to sequester the same property, among others, which was the subject of the sequestration orders in the instant case. These sequestrations had been vacated because supported by affidavits which failed to meet the requirements of the Delaware law. See *Baker v. Götz*, 336 F.Supp. 197 (D.Del.1971). This was reversed by a three judge panel of the Court of Appeals (one dissent) in an unreported opinion filed August 31, 1973. Upon rehearing by the court en banc the eight judges were evenly divided and as a result the opinion of this Court was affirmed, 492 F.2d 1238 (3d Cir. 1974). As a result the sequestrations were vacated. New sequestra-

tions were attempted which gave rise to the matters now pending.

**4.** Other assets sequestered and held by the Chancery sequestrator are not involved in these proceedings.

**5.** Although the assets statement of the Wilmington Trust Company is as of October 31, 1975, the assets and cash which the statement shows that the Wilmington Trust Company was holding as his agent were on deposit October 28, 1975. See attached letter of December 19, 1975, from the federal sequestrator to the Court.

in a checking account which is not reflected in the Wilmington Trust Company asset statement.[6]

The motion of defendants is for a specific order authorizing the federal sequestrator to turn over the "funds" which he had deposited with the Wilmington Trust Company between the time of the federal sequestration and October 28, 1975. The order is sought because of the refusal of the federal sequestrator to do so. His refusal is presumably due to his uncertainty as to the effect of the sequestration order of the Court of Chancery of October 28, 1975.

In resisting defendants' motion for a turn over order plaintiffs argue that the Court is without power to enter such an order, that if it has the power it should refuse to exercise it as a matter of discretion, and that if it should exercise the power it should deny the motion because of the Court of Chancery sequestration.

So far as the power of the Court to enter a turn over order is concerned, counsel for the plaintiffs have taken a lukewarm position. At the argument he said, "I am not sure that you don't have the power . . . and I am not pressing the power point. But we are strongly urging Your Honor not to exercise that power". Regardless of this seeming abandonment by plaintiffs of their lack of power argument the question has at least been suggested. Whether or not the power to enter the order exists is a threshold question which should be resolved, for if the power to enter the order is lacking defendants' motion should be denied.

Plaintiffs urge the Court to deny defendants' motion upon the basis of the Court of Appeals decision and upon the terms of 28 U.S.C. § 2283. The former, plaintiffs assert, represents the law of the case and must be followed by this Court; the latter, or at least the federal policy which it expresses, they likewise say, is a bar to the Court issuing a turn over order. Regardless of whether these arguments are related conceptually to "power" or "discretion", neither is persuasive.

Between the time when the Judgment Order was entered by the Court of Appeals and prior to the issuance of the mandate, defendants filed a motion in the Court of Appeals "to (A) protect and effectuate judgment of this Court rendered herein . . ." The motion was triggered by the *ex parte* sequestration order entered on October 28, 1975, by the Court of Chancery. Relying upon the inherent power of the Court to protect its judgment and the provisions of 28 U.S.C. § 2283, defendants asked the Court (a) to enjoin plaintiffs from maintaining any action in the State of Delaware which seeks to sequester the notes, warrants or debentures purportedly sequestered in the present action, (b) to order plaintiffs not to hinder or refuse to cooperate with the defendants in effecting a release or transfer of these assets, (c) to order plaintiffs to abandon and withdraw the Court of Chancery action insofar as it seeks to sequester the properties purportedly sequestered herein, and (d) for such other and further relief as may be necessary. This motion was resisted by plaintiffs and was briefed by the parties. On November 24, 1975, the Court in a unanimous decision denied the motion without an opinion.

The question whether this Court has the power, or should as a matter of discretion exercise it by authorizing its sequestrator to turn over assets which he held on October 28, 1975, was obviously not before the Court of Appeals and its decision cannot be construed as settling that question.

As to 28 U.S.C. § 2283, plaintiffs contend that the turn over order, if granted, would permit the indirect accomplishment of a result which the statute prohibits being done directly. Section 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

---

6. See attached letter from the federal sequestrator to the Court dated December 19, 1975.

The turn over order which plaintiffs seek is not tantamount to an injunction against the prosecution of the action in the state courts nor one designed to stay those proceedings. Other assets not involved in the instant litigation had been sequestered in that action, viz., shares of stock of Pacific Enterprises, Inc. Nothing which has been done by defendants thus far will effect their sequestration. To the extent that the state court sequestration purports to seize assets which are here involved, i. e., those coming into the possession of the sequestrator prior to October 28, 1975, and now held by the Wilmington Trust Company, a turn over order will as a practical matter render ineffective any seizure of the state court which purports to effect those assets. The turn over order, however, will simply be a judicial act by this Court in aid of its jurisdiction over those assets or one taken to protect or effectuate its judgment of January 7, 1975, vacating the sequestration order. Section 2283 presents no impediment to the Court entering such an order if it appears that circumstances warrant it in doing so.

That the Court has the power to issue the order is clear. The federal sequestrator is an officer of this Court. The funds which came into his possession and were deposited by him in the Wilmington Trust Company as his agent prior to October 28, 1975, in effect are the possession of this Court. The principle announced in *Lion Bonding & Surety Co. v. Karatz,* 262 U.S. 77, 88–9, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923) is a general one. There the Court said:

"The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relating thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction."

See also *Ex Parte Baldwin,* 291 U.S. 610, 615, 54 S.Ct. 551, 78 L.Ed. 1020 (1933).

This principle is one which has been recognized regardless of whether possession by the Court or its officer has been obtained in an action *in rem* or one *quasi in rem,* as is true in the instant case. *Princess Lida v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *Jacobs v. DeShetler,* 465 F.2d 840, 843 (6th Cir. 1972).

Plaintiffs deny the applicability of these cases. They emphasize that the order vacating the sequestration by this Court was affirmed and as a consequence the funds of which the federal sequestrator came into possession were not legally held by him. In view of the vacation of the sequestration, plaintiffs argue, there has been no valid *quasi in rem* process involved in this case and the case is simply an *in personam* action. It is not important that the federal sequestrator came into possession of the funds by an abortive sequestration. He has, nonetheless, possession in fact. In *Gumbel v. Pitkin,* 124 U.S. 131, 8 S.Ct. 379, 31 L.Ed. 374 (1887) the Court was faced with conflicting claims by attaching creditors to the proceeds of the sale of attached property which was in the hands of the U. S. Marshal. Initially the Marshal had seized the property under an invalid attachment. Nonetheless, the Court said at p. 156, 8 S.Ct. p. 390:

"The case, therefore, stands thus: For the reasons growing out of the peculiar relation between federal and state courts exercising co-ordinate jurisdiction over the same territory, the circuit court acquired the exclusive jurisdiction to dispose of the property brought into its custody under color of its authority, although by illegal means, and to decide all questions of conflicting right thereto."

Furthermore, the plaintiffs argue, the effect of the "Judgment Order" of the Court of Appeals and its mandate was simply to vacate automatically the sequestration and vested no power in the Court to enter an order authorizing the federal sequestrator to turn over the sequestered funds to the defendants. Plaintiffs say that if the federal sequestrator improperly refuses to turn over the funds to the defendants entitled to them, their remedy is by contempt proceedings or by a plenary action against

the sequestrator. (Tr. Dec. 22, 1975, pp. 17, 18) Defendants are not required to pursue any such round-about course. The principle is settled that a Court has inherent power to enforce its own judgment. *Riverdale Cotton Mills v. Alabama and Georgia Manufacturing Company,* 198 U.S. 188, 195, 25 S.Ct. 629, 49 L.Ed. 1008 (1905); *Bartlett v. General Motors,* 36 Del.Ch. 131, 127 A.2d 470 (Del.Ch.1956) (a decision by then Chancellor Seitz). The turn over order which defendants ask for is simply one for the enforcement of this Court's order vacating the sequestration. Its power to enter such an order, if the circumstances justify it, is clear.

■ Plaintiffs' plea that as a matter of discretion this Court should abstain from deciding defendants' motion until after the Delaware state courts have resolved the question of validity of the alleged Chancery sequestration and its effect upon the assets in the possession of the federal sequestrator, is not an appealing one. It is not appealing because plaintiffs themselves by two actions [7] in this Court have caused the funds in controversy to be in the possession of the federal sequestrator (C.A. Nos. 4072 and 74–99). Then, after after this Court by order vacated the sequestration, plaintiffs by their appeal fought to have the federal sequestration upheld. After plaintiffs have wrongfully caused defendants to be dispossessed of their property since 1971, it comes with ill grace for plaintiffs to ask that control of the property continue to be withheld from the defendants while the matter is litigated in the Court of Chancery and possibly the Delaware Supreme Court, as it well may be. Were this Court to be faced with an unsettled question of Delaware law which a Delaware court could decide as promptly as this Court could, or with only a little longer delay, this Court might well be persuaded to defer action until the Delaware courts had spoken. But this is not such a case. This Court and the Court of Appeals have already decided Delaware law on at least

one aspect of the matter before it and this Court is now prepared to deal with all remaining questions which a decision on defendants' motion entails. There is nothing unusual about a federal court deciding a question of state law when the case before the federal court requires it to make such a determination.

■ Turning then to the merits of defendants' motion, it is plain that the Court of Chancery's order of October 28, 1975, and the action of the Chancery sequestrator taken thereunder was ineffective as a seizure of assets which the federal sequestrator held on October 28, 1975. This is so for several reasons.

The Court of Chancery Rule 4(db) provides that no sequestration order shall be entered unless accompanied by an affidavit of the plaintiff or other credible person which gives a reasonable description of the property to be sequestered. None of the assets which the Wilmington Trust Company was holding on October 28, 1975, as agent for the federal sequestrator, were described in the affidavit filed in the Court of Chancery. The state sequestration order did not purport to reach them.

In addition, even if the Chancery affidavit had contained a reasonable description of the assets held by the Wilmington Trust Company on October 28, 1975, it would have been deficient in failing to state the nature of the defendants' title and interest therein; and if such title or interest was equitable in nature, the name of the holder of the legal title. Chancery Rule 4(db)(b)(3) requires this.

Plaintiffs point out that the order of the Court of Chancery authorized the Chancery sequestrator not only to seize specified notes, warrants and debentures, but also "all the rights belonging or appertaining to such property". The assets held by the Wilmington Trust Company on October 28, 1975, were not "rights belonging or appertaining" on October 28, 1975, to the notes, warrants and debentures of Itel, CBK and Textron, which the Chancery sequestrator pur-

---

7. After these two actions were begun the plaintiffs brought a third action in the Court of Chancery which defendants removed to this Court. (C.A. No. 74–145)

ported to seize. The assets so held represented distributions made by Itel, CBK and Textron prior to October 28, 1975, after their obligations had been purportedly sequestered by the federal sequestrator. Prior to payment those distributions had represented "rights belonging or appertaining" to those obligations. Once having been paid by the obligors the distributions and the securities in which they were invested became the property of the defendants. The payments by the obligors to the federal sequestrator constituted a "full and complete discharge" of any claims which defendants had against the obligors. See second paragraph of paragraph 4 of the sequestration order of this Court dated June 24, 1974, (C.A. No. 4072). Distributions made by Itel, CBK and Textron after October 28, 1975, were "rights belonging or appertaining" to such obligations as of that date. Defendants' motion does not relate to these assets. It is directed solely to the assets held on October 28, 1975, by the Wilmington Trust Company as agent for the federal sequestrator.

The sequestration by the Chancery sequestrator purportedly made under the Court of Chancery order of October 28, 1975, presents no impediment to the federal sequestrator and the Wilmington Trust Company as its agent from making such disposition of the assets shown on its statement of assets, attached hereto, as the defendants by their attorneys may direct. The defendants' motion for a turn over order will be granted and defendants should submit an order (approved as to form by plaintiffs, if possible) consistent with this opinion.

*Plaintiffs' motion for declaration that defendants have generally appeared*

Whether the Court looks to federal law or Delaware state law in determining whether defendants have submitted themselves personally to the Court's jurisdiction is of no practical importance.[8] Neither the federal nor Delaware state cases which have been brought to the Court's attention have directly dealt with a problem comparable to the present one. Nor does the rationale of those cases suggest that a determination of plaintiffs' motion will vary depending upon whether Delaware or federal law is applied. Cases involving the question whether action taken by a defendant amounts to a waiver of an objection to his claim of lack of personal jurisdiction have usually arisen after the defendant has colorably been served with *in personam* process. Here, there has been no colorable service upon the defendants. The sequestration process was premised upon the fact that the defendants, because of their non-residence, have not been and cannot be served. Plaintiffs have made no claim to the contrary, and the defendants had no reason to raise the defense of lack of personal jurisdiction, and hence there was nothing for the defendants to waive. See *U. S. Industries v. Gregg, supra,* fn. 1. The pending case, therefore, differs from most of the cases which discuss the waiver question.

The only jurisdiction which the plaintiffs purported to assert in this case was over the property of the defendants. By their alleged seizure of defendants' property plaintiffs sought to compel them to appear personally. The primary purpose of sequestration in Delaware is to compel the personal appearance of a non-resident defendant.[9] The seizure having been held to be valid the defendants had only one reason to file their motion in the Court of Appeals and that was to obtain an order which would clear the way for them to recover their property which the federal sequestrator was unwilling to release. This action,

8. In *Neifeld v. Steinberg,* 438 F.2d 423, 425, et seq. (3d Cir. 1971) and *U. S. Industries v. Gregg,* 58 F.R.D. 469, 474–476 (D.Del.1973) the circumstances required the Court to choose between federal and state law in cases where the claims sued upon, as in the present case, had their origin in state law.

9. *Weinress v. Bland,* 31 Del.Ch. 269, 71 A.2d 59 (Del.Ch.1950); *E. M. Fleischmann Lumber Corp. v. Resources Corp.,* 33 Del.Ch. 587, 98 A.2d 506 (Del.Ch.1953); *Lefcourt Realty v. Sands,* 35 Del.Ch. 164, 113 A.2d 428 (Del.Ch. 1955), *aff'd* 35 Del.Ch. 340, 117 A.2d 365 (Del. Supr.); *TWA v. Hughes Tool,* 41 Del.Ch. 11, 187 A.2d 350 (Del.Ch.1962); *Winitz v. Kline,* 288 A.2d 456 (Del.Ch.1971); *Hughes Tool v. Fawcett Publication,* 290 A.2d 693 (Del.Ch. 1972).

although seeking affirmative relief from the Court of Appeals, was consistent with and in a sense auxiliary to the claim which defendants had made from the very beginning of the action, that the sequestration was invalid as process to compel the defendants to appear. Defendants' action was not taken to resist the merits of plaintiffs' claim as was true in *Wyrough & Loser v. Pelmor Laboratories,* 376 F.2d 543 (3d Cir. 1967) where the defendant was held to have personally submitted itself to the jurisdiction of the Court. Some cases may be found in which actions short of presenting a defense on the merits have been held to constitute a personal submission to the jurisdiction of the Court. Cases in which defendants have filed an answer which combined a denial of personal jurisdiction with a permissive counterclaim fall within this category. See cases collected in *Neifeld v. Steinberg,* supra, at p. 429 in n. 13. In these cases the affirmative relief sought was independent of and in no way related to a challenge to the Court's jurisdiction over the defendants and accordingly that objection was held to have been waived. *Neifeld v. Steinberg* refused to extend this principle and apply it to a defendant which had initially filed a permissive counterclaim with its answer attacking the personal jurisdiction of the Court when the defendant filed a later amended answer raising the same jurisdictional defense but omitting the counterclaim.

Plaintiffs rely heavily upon *State v. Weinstein,* 411 S.W.2d 267 (Mo.App. 1967). That decision can have no possible bearing upon the instant case. In *Weinstein,* without challenging the jurisdiction which had been purportedly obtained over the defendant in a juvenile court proceeding, the attorney for the defendant entered an appearance and requested permission to examine the legal and social file. This was held to constitute a waiver of any objection by the defendant to the defect in the summons. The Court quoted from a number of cases which had stated that *any* attempt by a defendant to obtain affirmative action from the Court or any instance in which a defendant is an *actor* in Court constitutes a waiver of any lack of jurisdiction. It may be that the language used in *Weinstein* was appropriate to the case before it, and possibly in other cases. It can have no valid application, however, to the action taken by the defendants in the instant case where its only purpose was directly related to the jurisdictional challenge with defendants had at all times asserted.

█ In Delaware a party is not permitted to argue the merits of the complaint when making a jurisdictional challenge in a special appearance. *D'Angelo v. Petroleos Mexicanos,* 331 A.2d 388 (Del.Supr.1974); *Widder v. Leeds,* 317 A.2d 32 (Del.Ch.1974); *Wife v. Husband,* 286 A.2d 256 (Del.Ch.1971), *aff'd* 306 A.2d 737 (Del.Supr.1973); *Hughes v. TWA,* 40 Del.Ch. 552, 185 A.2d 886 (Del. Supr.1962); *Chrysler Corp. v. Dann,* 3 Storey 430, 171 A.2d 223 (Del.Super. 1961).

Several cases in Delaware have failed to hold that a defendant who seeks affirmative relief from the Court short of presenting a defense on the merits appears generally and thereby waives objections to the personal jurisdiction of the Court over him. The following are illustrative: *Yancey v. E. I. duPont de Nemours,* 243 A.2d 75 (Del.Ch.1968), *rev'd on other grounds,* 251 A.2d 561 (Del.Supr.1969) (obtaining order releasing some of the property seized but reserving the question of the validity of the seizure); *Schwartz v. Miner,* 36 Del.Ch. 481, 133 A.2d 599 (Del.Ch.1957) (filing motion to dismiss following a successful motion to quash sequestration); *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 38 Del.Ch. 490, 154 A.2d 684 (Del.Supr.1959) (presentation of order taxing costs following dismissal after vacation of sequestration); and see dictum in *Hughes v. TWA,* 40 Del.Ch. 552, 185 A.2d 886 (Del.Supr.1962) (motion to quash sequestration based in part on failure of complaint to state a claim upon which relief could be granted "has come perilously close to [a general appearance] . . . [b]ut this question is not raised and we express no opinion upon it".) Cf. *Chrysler Corp. v. Dann,* 3 Storey 430, 171 A.2d 223 (Del.Super.1961)

(motion filed under special appearance to dismiss certain issues on the merits was not treated as a general appearance although question not raised).

The relief which the defendants sought in the Court of Appeals is one which they could have obtained in the district court under 28 U.S.C. § 2283. Their action was consistent with the policy reflected in section 2283. To hold that they consented to the Court having personal jurisdiction over them because of their motion would be emphasizing form over substance and would be highly inequitable.

The motion of the plaintiffs for a declaration that the defendants have "generally appeared" will be denied.

### Defendants' motion to dismiss the complaint

The motion will be denied. Plaintiffs will have until April 1, 1976, to obtain jurisdiction over the defendants or their property, failing which the action will be dismissed by the Court without further action by the parties.

**CONNER, DALEY & ERISMAN**

ATTORNEYS AT LAW

1224 KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-3501

JAY H. CONNER
ROBERT E DALEY
JAMES A ERISMAN
XXXXXXXXXXXXXXXXXXXX
David H. Erisman

NEWARK OFFICE
206 EAST DELAWARE AVENUE
NEWARK, DELAWARE 19711
(302) 368-0133

DECEMBER 19, 1975

HAND DELIVERED

Honorable Edwin D. Steel, Jr.
District Court
Federal Building
Wilmington, Delaware   19801

RE:   Baker vs. Gotz, et al   4072

Dear Judge Steel:

Per your request I am enclosing a copy of my asset statement as of October 31, 1975, which reflects the amount of property I hold as Sequestrator in the Wilmington Trust Company on October 28, 1975.  You will see that the Sequestrator property held by Wilmington Trust Company is broken down into four categories:

1.   U.S. Treasury Bills

2.   Swiss Bonds

3.   Australian Bonds

4.   Checks listed under miscellaneous held be them.

The statement also reflects that they are holding cash in the amount of $4,852.09.  In addition I have a checking account with a balance in the amount of $11,250.00, which is not reflected on the enclosed asset statement.  Hoping this will be of some help to you.

Very truly yours,

Jay H. Conner

JHC:dh

Encs.

ASSET STATEMENT
AS OF

**WILMINGTON TRUST COMPANY**
WILMINGTON, DELAWARE 19899

ACCOUNT NUMBER

10-31-75   WILMINGTON TRUST COMPANY     AGENT
FOR JAY H CONNER SEQUESTRATOR
BY APPOINTMENT OF THE
UNITED STATES DISTRICT FOR
THE DISTRICT OF DELAWARE

1451

*Trust Department*

| FACE VALUE OF BONDS SHARES OF STOCKS | DESCRIPTION | RATE | MATURITY OR PAR VALUE |
|---|---|---|---|
| | U S GOVT BONDS | | |
| 15,000 | U S TREASURY DISC BILLS | | 11 06 1975 |
| 45,000 | U S TREASURY DISC BILLS | | 12 18 1975 |
| 280,000 | U S TREASURY DISC BILLS | | 12 26 1975 |
| 335,000 | U S TREASURY DISC BILLS | | 11 28 1975 |
| | BANKS & FINANCE BONDS | | |
| 3,039,000 | SCHWEIZERISCHE KREDITANSTALT BD | 7. | 9 11 1979 |
| 782,000 | SCHWEIZERISCHE KREDITANSTALT BD | 6.75 | 4 11 1978 |
| 364,000 | SCHWEIZERISCHE KREDITANSTALT BD | 6.50 | 9 11 1977 |
| 1,055,000 | SCHWEIZERISCHE KREDITANSTALT BD | 6.50 | 6 12 1977 |
| 1,028,000 | SCHWEIZERISCHE KREDITANSTALT BD | 7.25 | 12 13 1977 |
| | FOREIGN INVESTMENT | | |
| 1,725,000 | AUSTRALIA EXTERNAL | 9.00 | 4 01 81-90 |
| | MISCELLANEOUS | | |
| 1 | CK 269086 FOR 3437 60 SWISS FRANCS DRAWN ON SWISS CREDIT BANK DTD 9/8/75 PAYABLE TO WILMINGTON TRUST CO. | | |
| 1 | CK 908689 FOR 1221 5 FR DRAWN ON SWISS CREDIT BK DTD 9/10/74 PAY TO MR JAY H CONNER | | |
| 1 | CK 908691 FOR 531 70 S FR DRAWN ON SWISS CREDIT BK DTD 9/10/74 | | |

⊽
ASSET STATEMENT **WILMINGTON TRUST COMPANY**
AS OF WILMINGTON. DELAWARE 19899
10-31-75 

ACCOUNT NUMBER

1451

*Trust Department*

| FACE VALUE OF BONDS SHARES OF STOCKS | DESCRIPTION | RATE | MATURITY OR PAR VALUE |
|---|---|---|---|
| | PAY TO MR JAY H CONNER SEQUESTRATOR | | |
| 1 | CHECK NO 150440 FOR 629 20 S FR DRAWN ON SWISS CREDIT BANK DTD 12/5/74 PAYABLE TO MR JAY H CONNER | | |
| 1 | CK 150857 FOR 577 70 S FR DRAWN ON SWISS CREDIT BK DTD 4/11/75 PAYABLE TO MR JAY H CONNOR | | |
| 1 | SEALED COUPON ENVELOPE CONTAINING 1 COUPON VALUED AT 23660 SWISS FRANCS CLIPPED FROM 364/M SCHWEIZERISCHE KREDITANSTALT BD 6 50 PC DUE 9/11/77 | | |
| 1 | SEALED COUPON ENVELOPE CONTAINING 3 COUPONS VALUED AT 212730 SWISS FRANCS CLIPPED FROM 3039/M SCHWEIZERISCHE KREDITANSTALT BDS 7 PC DUE 9/11/79 | | |
| 1 | CHECK NO 269353 FOR 3444 45 SFR DRAWN ON SWISS CREDIT BANK DTD 10/16/75 PAYABLE TO WILMINGTON TRUST COMPANY | | |

**250**

**WILMINGTON TRUST COMPANY**
WILMINGTON DELAWARE 19899

ACCOUNT NUMBER

1451

*Trust Department*

| FACE VALUE OF BONDS SHARES OF STOCKS | DESCRIPTION | RATE | MATURITY OR PAR VALUE |
|---|---|---|---|
| | PRINCIPAL CASH $4,852.09 | | |
| 8,668,009 | | | |