Peter J. GARRETSON and Bank of Delaware, a corporation of the State of Delaware, as Trustee under a certain revocable living trust agreement executed June 16, 1967, with Cornelius D. Garretson, as Settlor, Defendants Below, Appellants,

v.

Jessie B. GARRETSON, Plaintiff Below, Appellee.

Supreme Court of Delaware.

May 23, 1973.

* See Abex Corporation v. Brinkley, Del.Super., 252 A.2d 552 (1969).

William H. Uffelman, Jr., of Theisen & Lank, Wilmington, for appellant Peter J. Garretson.

Charles F. Richards, Jr. and Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, for appellant Bank of Delaware.

Richard E. Poole, of Potter, Anderson & Corroon and Joseph Donald Craven, Wilmington, for appellee Jessie B. Garretson.

James M. Tunnell, Jr., Andrew B. Kirkpatrick, Jr., Paul P. Welsh and William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for Wilmington Trust Company, Amicus Curiae.

WOLCOTT, C. J., and CAREY and HERMANN, JJ., sitting.

WOLCOTT, Chief Justice:

These are appeals taken by the husband, defendant below, and Bank of Delaware, Trustee under a testamentary trust for the benefit of the husband, from orders of the Chancellor denying the Bank's motion to dismiss the wife's complaint and the husband's motion to vacate an order of sequestration, and granting counsel fees to the wife payable out of the trust funds. See Opinion below Wife v. Husband, Del. Ch., at 286 A.2d 256. Both the Bank of

Delaware and the husband urge substantially the same grounds for their motions. Wilmington Trust Company, appearing as *Amicus Curiae*, filed a brief in support of the two defendants' appeals.

The individual parties were married in 1943 and lived together until December 19, 1967, when the husband left the wife. In 1968, while the husband was still a resident of Delaware, the wife commenced a separate maintenance action in the Court of Chancery. Ultimately, the parties negotiated a settlement which was cast in the form of a separation agreement and incorporated by the Vice Chancellor in a final order of September 9, 1969. Under the terms of the settlement, the husband was required to pay the wife $400 a month. Shortly thereafter, the husband left Delaware and established a residence in the State of Florida, and obtained a divorce in the Republic of Mexico dated October 23, 1969.

Prior to these events, in September of 1968, the husband brought an action for divorce against the wife in Delaware on the ground of incompatibility. Ultimately, a decree nisi was denied. Then followed the separate maintenance action and the final order incorporating the separation agreement.

The husband has paid nothing to the wife since May, 1970. As a result, the wife brought a second action in the Court of Chancery, now before us, seeking a judgment against the husband for the amount of the arrearages and an order upon the Bank of Delaware, Trustee, to pay into Court the amount of any such judgment, and to make payments thereafter directly to her in compliance with the order entered in the separate maintenance action.

The amended complaint alleges that the husband is a resident of Florida, and is the beneficiary of a testamentary trust of which Bank of Delaware is Trustee, and from which he receives annual payments of about $18,000.

Jurisdiction over the Bank of Delaware was acquired by personal service. In order to obtain jurisdiction over the husband, now a resident of the State of Florida, the plaintiff obtained a sequestration order under which the income from the testamentary trust, payable to the husband, was seized in order to coerce his appearance in the Court of Chancery.

Bank of Delaware, Trustee, appeared and moved to dismiss the complaint, and the husband appeared specially, moving to vacate the order of sequestration. The husband has never been served personally with process of the Court of Chancery, nor has he appeared generally submitting himself to its jurisdiction.

The basic questions before us for decision are the validity of the sequestration of the income of the beneficial interest held by the husband in the testamentary trust, and the Chancellor's order allowing interim attorneys' fees and expenses to the wife's counsel out of the trust income.

Initially, we note that the husband and Bank of Delaware, Trustee, sought to bring into the case the marital status of the wife and the husband. Specifically, a certified copy of a divorce decree, issued in the Republic of Mexico, was offered and accepted in evidence without objection on the part of the wife's counsel. This purports to show that the husband and wife were divorced by the Court of the Republic of Mexico after the entry of the final order in the separate maintenance action. The Chancellor refused to consider this as before him under the present motions. We agree with the Chancellor for the reasons stated in the Opinion below.

We therefore consider that, for the purposes of the appeals before us, the record discloses solely that the individual parties are still husband and wife. Whether or not this status will remain after a final hearing is beside the point. We may not, on these appeals, consider any matters appearing outside of the complaint, the se-

questration order, and the motions addressed thereto.

■ The motion of the husband to vacate the sequestration order, and the motion of the Bank of Delaware, Trustee, to dismiss the complaint, are based fundamentally upon the proposition that the trust in question is a spendthrift trust, and under the terms of the trust instrument—that is, the will—the wife may not seek redress by the seizure of trust assets.

10 Del.C. § 366(a) provides, in part, that if a defendant in an action pending in the Court of Chancery is a nonresident, the Chancellor may order such nonresident defendant to appear on a certain day and, if he does not appear, compel his appearance "by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, * * *." The two appellants argue that the property sought to be seized under the Chancellor's sequestration order is not the subject of seizure in order to compel appearance.

The argument is based upon ITEM II of the will creating the trust which provides as follows:

"The interest of a beneficiary in the trust property or in the income therefrom shall not be subject to the rights of the creditors of such beneficiary and shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors, and the interest of such beneficiary in the trust property or in the income therefrom shall be unassignable."

It is argued that the provisions of ITEM II of the will comply exactly with the provisions of 12 Del.C. § 3536 validating the inclusion of spendthrift trust provisions in a trust instrument. This section provides in part as follows:

"The creditors of a beneficiary of a trust shall have only such rights against such beneficiary's interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trust or by the laws of this State. . . . Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors."

It is to be noted that both § 3536 and ITEM II of the will provide in terms that the trust property shall "not be subject to the rights of the creditors of [such] beneficiary, [and] shall be exempt from execution, attachment, distress for rent, * * * on behalf of such creditors * * *." The question thus presented is whether or not a wife, seeking support from her husband, is a creditor within the meaning of the word as it is used in § 3536 and in ITEM II of the will. If the wife is a creditor, then seizure of any of the trust assets on her behalf is prohibited by the terms of § 3536 and of ITEM II of the will. The Chancellor concluded that the wife was not a creditor in that meaning of the word, and we agree with that conclusion.

An action brought by a wife seeking separate maintenance from her husband who has deserted her is an attempt on her part to compel the performance of a duty imposed by law upon the husband to support his wife and dependents.

The weight of authority is to the effect that a wife seeking such relief is not a creditor and is not bound by the spendthrift provisions of a trust from reaching the trust assets. 2 Scott on Trusts, § 157.-1; Bogert, Trusts and Trustees, § 224 (2nd ed.); Griswold, Spendthrift Trusts, § 333 (2nd ed.); Levine v. Levine, 209 F. Supp. 564, Dist. of Del. (1962). A wife, under such circumstances, can hardly be a creditor who is defined as "one to whom a

debt is owing by another person who is the debtor", Black's Law Dictionary, Rev. 4th ed.

Bank of Delaware, Trustee, however, argues that the wife in the case before us is in fact a creditor seeking specific performance of a contract, viz., the separation agreement which was made a part of the final decree in the separate maintenance action. We think, however, to the contrary. We regard the wife's initial action for separate maintenance and the second action made necessary in order to seek compliance with the final order in the separate maintenance action as one piece of litigation and, in reality, the same lawsuit seeking support payments from the husband. To take any other view is to separate a whole into component parts which gives an entirely misleading appearance to the whole. This case is not unlike that of Cohen v. Cohen, Del.Supr., 269 A.2d 205 (1970), in which we held that successive actions, though different in form, were to be regarded as "one continuous piece of litigation". The same is true with respect to this case, and we regard it, as did the Chancellor, as a continuous piece of litigation seeking maintenance for a deserted wife.

■ Next, Bank of Delaware and the *Amicus Curiae* argue that dividends and interest which are held by a bank as Trustee cannot be sequestered by reason of 10 Del.C. § 3502 which provides in part as follows:

"All corporations doing business in this State, except banks, savings institutions and loan associations, are subject to the operations of the attachment laws of this State, as provided in case of individuals."

The argument is that equitable seizure by sequestration of assets is an attachment under the laws of this State and, since it is such, all banks are exempt from the attachment of such assets in their hands. It is, of course, true that the modern equita-ble procedure of sequestration under 10 Del.C. § 366, has been held to be analogous to foreign attachment at law. Sands v. Lefcourt Realty Corporation, 35 Del.Ch. 340, 117 A.2d 365 (1955). And in Provident Trust Co. v. Banks, 24 Del.Ch. 254, 9 A.2d 260 (1939), the Court of Chancery applied § 3502 to reject a claim for equitable execution against a judgment debtor.

We think the reference in the *Sands* case to the fact that sequestration by Chancery is analogous to foreign attachment at law had reference primarily to the procedure to be followed in both instances and in the ultimate relief sought by such process; that is, the compulsion upon a nonresident defendant to make a general appearance in the particular court. The *Provident Trust Company* case, we think, is distinguishable from the case at bar since that case was an attempt by a judgment creditor of a defendant, owning assets in the hands of a bank, to attach those assets. In point of fact, the Chancellor seems to limit his holding to the precise facts of the case since he speaks throughout in terms of a creditor's bill presented to collect a judgment.

10 Del.C. § 3502 exempts banks from the "Attachment Laws" of the State. The question is, therefore, whether the statutory remedy of sequestration in equity is an attachment law. 1 Del.C. § 303 lays down as a rule of statutory construction that technical words and phrases which have acquired a particular meaning in the law shall be so construed. And see Hollett v. Wilmington Trust Co., 6 W.W.Harr. 170, 172 A. 763 (1934). At the time of the enactment of the predecessor of § 3502 in 1871, the statutes regulating attachments at law were contained in 1852 Code Ch. 104, titled "Laws of Attachment", while the statutes regulating equitable attachments were contained in 1852 Code Ch. 95, titled "Laws of the Court of Chancery". It is thus plain that in 1871 the enactment of 14 Laws Ch. 90, exempting banks from attachment, had application only to attachment at law. There can be no doubt,

therefore, that in 1871 the phrase "attachment laws" had a settled meaning in the law and must be construed in the light of that meaning.

We conclude, therefore, that the seizure by sequestration of spendthrift trust income in the hands of a bank as Trustee at the suit of a wife seeking maintenance from a husband is not an attachment within the meaning of § 3502. The Chancellor so held, and we agree.

■ Finally, we turn to the question of the award by the Chancellor of interim attorneys' fees and allowances to the wife's attorneys. It is argued on behalf of the appellants that counsel fees may not be awarded in an action for specific performance of a contract. Generally speaking, this is true; however, the Chancellor held, and we have also held, that this litigation is not to be separated into its component parts, but is to be considered as one continuous piece of litigation which started off as a separate maintenance action. The award of counsel fees is therefore entirely proper. Again, this situation is almost the same as that which arose in Cohen v. Cohen, supra.

It is to be blinded by form to argue, as does the Bank, that the separate maintenance action came to an end by the entry of the final order incorporating the terms and provisions of the separation agreement, and that the second action brought to enforce that order must be regarded as an entirely independent and separate lawsuit unrelated to the separate maintenance action. This is to give substance a subordinate place to that of form, and this we refuse to do. We therefore affirm the award by the Chancellor of interim fees and costs to the wife's counsel. In line with our conclusion that the trust fund may be sequestered, we also approve the Chancellor's order that counsel fees be paid out of the trust income.

It of course remains to be seen, if the husband appears generally in this litigation and subjects himself to the jurisdiction of the Court of Chancery, whether, on final hearing, his contentions with regard to his Mexican divorce will be ultimately upheld, in which event we assume that the wife would lose her status as wife, and there may be an entirely different situation then facing the Chancellor. This question, however, is not before us, and we make no ruling upon the future outcome of the course of the litigation.

The judgment below is affirmed.