DELAWARE TRUST COMPANY, a Delaware corporation, Plaintiff,

v.

Morris PARTIAL, t/a Oriental Rug Gallery of Delaware, Inc., and Wilmington Trust Company, a Delaware corporation, Defendants.

Civ. A. No. 8479.

Court of Chancery of Delaware, New Castle County.

Submitted: May 12, 1986.
Decided: May 13, 1986.

Thomas P. Collins of Wilmington Trust Co., Legal Dept., Wilmington, for defendant Wilmington Trust Co.

Walter P. McEvilly, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for H. Feinberg Furniture Co.

Daniel F. Lindley and Linda A. Blanchfield of Potter, Anderson & Corroon, Wilmington, for plaintiff.

ALLEN, Chancellor.

The Delaware Trust Company, plaintiff, has moved at the outset of this case for a temporary restraining order enjoining the

withdrawing, transferring or encumbering of funds held by defendant Morris Partial in a depository account at the Wilmington Trust Company, a Delaware banking corporation. The pending motion also asks that Wilmington Trust Company be temporarily restrained from permitting the withdrawal, etc., of amounts now held on deposit with it by defendant Partial and/or his business, Oriental Rug Gallery of Delaware, Inc.

The gist of the complaint is a charge that defendant Partial is wrongfully refusing to return to Delaware Trust Company some $15,750. The facts establishing that legal wrong are made out on the present record through the verified complaint and the affidavit of Roger Pernick. Those papers tell the following story.

In connection with the winding up of a portion of the business of a local furniture retailer, Mr. Pernick issued a check drawn on Delaware Trust Company to defendant Partial or his business in the amount of $15,750 in full payment and satisfaction of an open account. On the following day, it was discovered that the balance due to Partial was actually somewhat less than $15,750 and Mr. Pernick, after unsuccessfully attempting to reach Mr. Partial, placed a "stop payment" order with Delaware Trust Company on the check. Two days later, on May 1, 1986, Mr. Pernick advised Mr. Partial of the foregoing and agreed with Mr. Partial that the correct balance due to Partial was $14,914. A second check in the amount of $14,914 drawn on Delaware Trust Company was then issued and delivered to Partial. Mr. Partial expressly agreed at that time not to deposit the $14,914 check until the stop payment had been confirmed.

Nevertheless, Partial deposited the second check. Both checks were paid by plaintiff, resulting in an overpayment. In later conversations, Partial assured Pernick that the $15,750 excess would be reimbursed on May 8, 1986. There has been no reimbursement. Partial has now apparently refused to make any present reimburse-ment, indicating that he wished to consult his attorney.

This action was filed in this Court on May 12, 1986, claiming that plaintiff's legal remedy would be inadequate "because, upon information and belief, Partial's ... business is newly established and may not have sufficient income or assets that are subject to attachment or seizure by plaintiff." *See,* 10 *Del.C.* § 342. The application for a restraining order was presented immediately.

### I.

A hearing on the pending application for a temporary restraining order was held without notice to Mr. Partial, plaintiff claiming that to provide such notice would risk defeating the purpose of the motion. It is not alleged that Mr. Partial is a non-resident of this state; nor that he cannot be located or is preparing to flee the jurisdiction. *See,* 10 *Del.C.* §§ 365, 366.

Wilmington Trust Company was afforded notice of the hearing, has appeared and resists the granting of the motion insofar as the motion seeks to restrain it. In that connection it should be noted that the complaint contains no allegations of wrongdoing directed towards Wilmington Trust Company.

For purposes of the current motion, I assume the truth of the allegations of the verified complaint and the Pernick affidavit. In the circumstances thus shown, the utility to plaintiff of the relief sought is apparent and, indeed, assuming those facts to be true, the common-sense appeal of simply freezing the money that Partial is now wrongfully retaining until legal rights in it may be determined, is powerful. Unhappily for plaintiff, however, the granting of the relief sought is, in my opinion, precluded by the legislative policy reflected in the statute that exempts banks in the state from the operation of the attachment and garnishment laws of this state. *See,* 10 *Del.C.* § 3502.

## II.

Consideration of the pending motion must begin with the question of what legal theory supports the issuance of an order restraining the Wilmington Trust Company in these circumstances? As no wrong is alleged against it, but only against its creditor, Mr. Partial, and as the only relief sought against it is the freezing, pending further order of the Court, of the amounts held by it in Partial's account, it is apparent that the restraining order sought is in substance a species of garnishment.

A garnishment is a judicial writ or order, sometimes issued at the outset of litigation, that directs a third person holding property of the principal defendant to hold such property and not to pay it over to the defendant pending further order of the Court; the property thus held may then be resorted to at the conclusion of the litigation for the satisfaction of any judgment that the plaintiff may achieve. A garnishment is a remedy available from the Superior Court. 10 *Del.C.* §§ 3501, 3502, 3509.

Why has plaintiff, in this instance, not proceeded in the conventional way in the Superior Court on this claim for money damages, by filing his complaint in that court and seeking the issuance of a mesne writ of garnishment? The answer, I believe, lies in the provisions of 10 *Del.C.* § 3502. That statute provides as follows:

Corporations Subject To Attachment and Garnishment.

All corporations doing business in this State, except banks, savings institutions and loan associations, are subject to the operations of the attachment laws of this State, as provided in the case of individuals.... A corporation shall be liable to be summoned as garnishee.

Since, the third party to be garnished in this instance would be a bank, Section 3502 would preclude plaintiff, not from pursuing its claim in the Superior Court against Mr. Partial, but from obtaining the mesne process of garnishment in that court. It is for this reason alone that plaintiff claims that its legal remedy is inadequate.

The order sought in this instance, while denominated a writ of injunction rather than a writ of garnishment, is the substantial equivalent of a garnishment, albeit issuance of the writ requested would, presumably, not itself create a lien on the property subject to the order, as would a garnishment. *Compare, In re Dukes,* D.Del., 276 F. 724 (1921). I do not regard that difference as consequential in the present circumstances, however. In fact, plaintiff seeks an order directing a third party, holding property of the principal defendant, to refrain from paying over that property to the principal defendant and hold it for ultimate satisfaction of a judgment achieved in the litigation. Where, as here, the entity sought to be so enjoined is a bank, I regard the substantial functional identity of the two remedies as sufficient to properly implicate the clear legislative policy exempting banks from the effects of garnishments.

It has been held that Section 3502 does not directly exempt Delaware banks from the operation of our sequestration process. *See, Garretson v. Garretson,* Del.Supr., 306 A.2d 737 (1973). The statute authorizing sequestration (10 *Del.C.* § 366), however,—and the *Garretson* case construing it—is limited to the seizure of property to compel appearance and thus has no application to the case at bar.

Chancellor Harrington's opinion in *Provident Trust Co. v. Banks,* Del.Ch., 9 A.2d 260 (1939) supplies more pointed guidance to the question here presented. In that action plaintiff sought equitable execution against amounts held by Mrs. Banks, a judgment debtor of plaintiff, in the Wilmington Trust Company. The Court there declined to entertain the suit holding that the predecessor of Section 3502 precluded the remedy sought. It held:

By a creditors' bill, the creditor seeks to satisfy his judgment out of the equitable assets of the debtor, which cannot be reached on execution process. 5 Pom.Eq.Jur., 4th Ed., § 2308 (§ 885).

Such a bill is, therefore, in the nature of an equitable execution or proceeding *in rem* rather than *in personam*....

It is an elementary rule that property, which is exempt from levy and sale under legal process, either by general exemption statutes, or because of a clearly defined public policy, cannot be reached by a creditors' bill.

\* \* \* \* \* \*

It is necessarily conceded that by reason of the provisions of [Section 3502], a banking institution, whether acting as trustee or otherwise, is not subject to the attachment laws of this State, and money or other property in its custody and control is, therefore, exempt from seizure in that proceeding in the law courts. [citing cases] That statute defines the policy of this State toward such institutions, and the same rule, therefore, applies to a creditors' bill filed in this court, in which a banking institution, acting as a trustee, is a party defendant. The complainants' bill, therefore, fails to state a cause of action. 9 A.2d at 262.

It is an elementary, if carefully limited, proposition of equity jurisprudence that equity will follow the law, by which it is meant both that courts of equity will recognize and give effect to all legal rules in their proper sphere (when applied to legal estates) and that, beyond that, the policies reflected in rules of law will be extended to equitable estates by analogy where appropriate. *See*, 2 Pomeroy *Equity Jurisprudence* §§ 425, 426 (1941). I take it that it was this principle that this Court applied in the *Provident Trust* case and it is this respect for the policies underlying the statutory law that compels the decision here reached. The policy of the legislature with respect to the seizure or garnishment of funds held by Delaware banks is clear. I cannot conclude that that policy may be ignored by the simple expedient of denominating the writ sought as one of injunction rather than one of garnishment. Therefore, I conclude that irrespective of the strong probability of merit shown by the complaint, it would be inappropriate for this Court to grant the remedy now sought insofar as it seeks to restrain *pendente lite* the disposition by the Wilmington Trust Company of funds held by it.

## III.

The pending application seeks as well to restrain Mr. Partial from withdrawing funds from his Wilmington Trust account. With respect to this relief, the provisions of Section 3502 have no application. The order, if granted, would run only to Mr. Partial and not to a Delaware bank.

As indicated above, I conclude that plaintiff has shown a clear probability of ultimate success on the merits of its claim. Whether it has shown an imminent threat of irreparable injury—the *sine qua non* of a temporary restraining order—is, however, another matter. On that subject, all that the record at this stage discloses is that Mr. Partial's business entity—Oriental Rug Gallery of Delaware, Inc., is a newly-formed business. It is not clear whether that entity would be judgment-proof or not, although I am asked to, in effect, assume that it would be. Nor is it clear whether Mr. Partial would, in the circumstances, be personally liable on the claim and, if so, whether he is judgment-proof or not.

The imposition of judicial restraint upon the disposition of property before a property-owner has had an opportunity to be heard with respect to the restraint, is an extreme remedy. In the analogous area of domestic attachment at law, before a writ of domestic attachment may issue, a court must find "that the defendant cannot be found, or that the defendant is justly indebted to the plaintiff in a sum exceeding $50, *and* has absconded from his usual place of abode or is about to leave the State or has gone out of the State with intent to defraud his creditors or to elude process." 10 *Del.C.* § 3501.

With respect to attachment through sequestration process, again, it is necessary

for the court to determine that the defendant "cannot be found to be served ... and that there is just ground to believe that he intentionally avoids such service". 10 *Del.C.* § 365.

■ It is insufficient for a plaintiff seeking to attach property of a defendant simply to allege in conclusory terms that there is a risk that if defendant has notice of a proposed seizure he may abscond. I see no reason to conclude that a plaintiff should be granted the analogous remedy here sought on less of a showing. Allegations of the kind here made, do not, in my opinion, establish the kind of actual threat of irreparable injury that would be necessary to justify the extraordinary remedy of a restraining prior to notice and an opportunity to be heard.

So concluding, I need not reach the troubling questions (1) whether an *ex parte* restraining order that restricts the defendant from exercising any dominion whatsoever over property would, in the circumstances of this case, constitute a governmental "deprivation" of "property" within the meaning of the fourteenth amendment to the federal Constitution or (2) whether any such deprivation would constitute a violation of those principles of constitutional law that, as a general matter, require notice and opportunity to be heard before one may be "deprived," even temporarily, of such "property". *See, Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

For the foregoing reasons, the pending application will be denied. IT IS SO ORDERED.