DOVER ASSOCIATES JOINT
VENTURE, Petitioner,

v.

William P. INGRAM and Margaret
Anne Ingram, Respondents.

C.A. No. 1448.

Court of Chancery of Delaware,
Kent County.

Submitted: March 27, 2000.
Decided: April 5, 2000.

John W. Noble of Parkowski, Noble &
Guerke, Dover, DE, for Petitioner.

Patrick Scanlon of Barros, McNamara,
Scanlon, Malkiewicz & Taylor, Dover, DE,
for Respondents.

## OPINION

STEELE, V.C.

This is the Court's ruling on a petition
for appointment of a receiver to collect
rents, manage and maintain property
pending mortgage foreclosure and defi-
ciency judgment proceedings in the Supe-
rior Court. I must decide whether this

Court should authorize interim equitable relief to protect a mortgagee's interest after foreclosure but before the law court resolves a contested deficiency action.

On June 21, 1996, respondents William P. Ingram and Margaret A. Ingram executed and delivered a Mortgage, Security Agreement and Assignment of Rents ("Mortgage") to petitioner Dover Associates Joint Venture encumbering real property located on South DuPont Highway in Dover, Delaware.[1] The original principal amount of the mortgage, with interest, totals $1,150,000.

Some time after the execution of the Mortgage, the Ingrams defaulted on their payments. The Mortgage provided, in relevant part, that after default Dover Associates:

shall be entitled, upon application to a Court of competent jurisdiction, to the immediate appointment of a receiver for all or any part of the property and the rents, whether such receivership be incidental to a proposed sale of the property or otherwise, and the Mortgagor hereby consents to the appointment of such a receiver.[2]

Dover Associates filed a mortgage foreclosure proceeding in Superior Court. On November 25, 1998, the parties stipulated to a judgment in which Dover Associates agreed to accept $1,390,000 in full satisfaction of the mortgage. The Ingrams were to transfer all of their interest in the property to Dover Associates in the event they did not produce the full amount within 90 days. Rather than produce the cash suggested by the stipulation, the Ingrams procured a ready and able buyer willing to purchase the property for $1,390,000. The Buyer could not immediately close, however, and, as a result, Dover Associates took possession and control of the property. The Superior Court action proceeded to foreclosure and Dover Associates bid and obtained the property for $1,000,000 at the sale.[3]

On March 10, 2000, Dover Associates petitioned for the appointment of a receiver to collect the rents, manage and maintain the property during the Superior Court litigation. The parties argued the motion on March 27, 2000.

Dover Associates asks that I appoint a receiver for the property in anticipation that the Superior Court will rule that there is a deficiency. Dover Associates asserts two grounds supporting its petition: (1) the Court's inherent equitable power; and (2) the contractual language in the mortgage agreement.

**Have Dover Associates Stated and Supported Adequately an Equitable Claim to Justify Relief in the Form of Appointment of a Receiver?**

■ At oral argument, the Ingrams argued that the facts in this case did not support equity's intervention because Dover Associates failed to dispose of the property in a commercially reasonable manner. Dover Associates chose to press on with a foreclosure action rather than negotiate terms for sale to a buyer willing to pay $1,390,000. They assert that the circumstances of this particular case where the mortgagee rejects a $1,390,000 offer, successfully bids $1,000,000 at the sale, and then sells after foreclosure to that

1. The record reflects that the Ingrams operated a business entity, 1101 Stone Associates, LLC, that currently manages and maintains the subject property and collect rents from .the tenants of the subject property. The record is unclear about whether they or it are also tenants from whom rent is being collected.

2. Mortgage, Security .Agreement and Assignment of Rents (as it is titled) signed by William P. Ingram and Margaret Anne Ingram to

Dover Associates, c/o Cambridge Capital Group Inc. (June 21, 1996)— § 7.03 *Taking Possession or Control of the Property.*

3. Dover Associates purchased the property for $1,000,000 and then sold it for $1,200,000 to the ready, willing and able ($1,390,000) buyer procured by the Ingrams. The deficiency action is pending in Superior Court of the State of Delaware in and for Kent County. *Ingram v. 1101 Stone Associates, LLC, et al.,* C.A. No. 99C–09–006–HDR.

same ready, willing and able $1,390,000 buyer for $1,200,000 will both defeat a deficiency claim in Superior Court and prevent, on the merits, the intervention of equity to protect one who acts unfairly as Dover Associates has here. The gravamen of the Ingrams' argument is that "one who seeks equity must do equity." They assert that Dover Associates' sole and adequate remedy should be the deficiency action in Superior Court. The law court, the Ingrams suggest, can adequately sort out the claims of the parties and award money damages accordingly.

Dover Associates argues that the Ingrams' default on the mortgage payments followed by their failure to come up with cash as promised in the Superior Court stipulation compels the conclusion that the Ingrams should not continue to collect rents, manage and maintain the property pending a resolution of the disputed deficiency claim in Superior Court. Dover Associates suggests, with little subtlety, that those rents may well be misdirected and unavailable to defray any portion of an eventual deficiency judgment.

I am not persuaded that these highly contested facts justify the exercise of this Court's inherent discretion to appoint a receiver *pendente lite*. My conscience feels numb, not to say unpricked, by Dover Associates' perceived dilemma after they sold the property they bought for $1,000,000 to a buyer for $1,200,000 who neither bid at the foreclosure sale nor followed through on a promise to purchase at $1,390,000. The law court will determine the truth of as well as the effect of these circumstances in the deficiency action. I, however, can not find a compelling reason for equity to intervene (and, therefore, that Dover Associates has adequately supported an equitable claim) to provide a remedy, albeit only an interim one, to Dover Associates on these facts.

### Did the Parties Preordain the Intervention Nonetheless by the Language of the Mortgage?

■ I am, however, compelled to act by the agreed terms of the Mortgage which call for the appointment of a receiver under even these circumstances.

The mortgage clearly provides for the appointment of a receiver to collect rents, manage and maintain the property where there has been a default and sale proceedings have been initiated.[4] Presumably, the parties bargained for this remedy in the event of a default. At least that is what I must assume in the absence of an argument to the contrary. The Ingrams failed to make payments under the terms of the mortgage which triggered Dover Associates' contract right to "the immediate" appointment of a receiver "upon application."

■ It is an established maxim of equity jurisprudence that "equity will follow the law."[5] Where factual circumstances establish a contractual right to appointment of a receiver, equity will follow the law and "give effect to all legal rules in their proper sphere, and policies reflected in rules of law will be extended to equitable estates by analogy where appropriate."[6]

---

4. *See supra* note 2 and accompanying text. *See also* Mortgage, Security Agreement and Assignment of Rents— § 7.04 *Management of the Property*, which states in pertinent part: Upon obtaining possession of the property or upon the appointment of a receiver, as the case may be, Mortgagee may, at its sole option (a) make all necessary or proper repairs and additions to or upon the property, (b) operate, maintain, control, make secure and preserve the property, (c) receive all rents and (d) do such other acts as are necessary to preserve the value of the security. In so doing, the Mortgagee or such receiver shall have the right to manage the property and to carry on the business of the Mortgagor and may exercise all other rights and powers of the Mortgagor, either in the name of the Mortgagor or otherwise.

5. 27A Am.Jur.2d Equity § 113 (1996).

6. *Delaware Trust Company v. Partial,* Del.Ch., 517 A.2d 259 (1986).

The Ingrams argue that Dover Associates acted inequitably in disposing of the property and therefore it would be unconscionable to enforce the contractual right to collect rents and manage and maintain the property.[7] Equity can not, as the Ingrams suggest it should, abrogate a legal right contracted for by a party. I concede that a wide range of discretion may be exercised for the appointment of a receiver under circumstances where the facts compel the conclusion that "it is necessary to prevent manifest wrong and injury"[8] and where there is no contract expressing the parties' intent and expectations. That standard for determining when equity should intervene (i.e., that there exists a valid equitable claim) does not apply in this case where an explicit, clear contractual provision provides for the "immediate" appointment of a receiver "upon application."[9] In essence, the parties have agreed by contract that a default *is* the compelling circumstance which creates the right to the equitable remedy of the appointment of a receiver. Equity must follow the law whenever the rights of the parties are clearly defined and established by a legal, contractual right.[10]

I recognize that I hold that Dover Associates' equitable claim for appointment of a receiver is wanting. They are, however, entitled to that same equitable remedy under the circumstances of this case as a result of their contractual right for which there is no comparable and adequate remedy at law. I, nevertheless, think it advisable to discuss balancing the parties' competing equities.[11] Appointing a receiver to collect the rents, maintain and manage the property pending litigation in Superior Court under the terms of the order I enter here will not harm the Ingrams. The Ingrams will not be harmed simply by losing an opportunity to collect rents from the property.[12] On the other hand, equity supplies the remedy for Dover Associates' contractual right to appointment of a receiver to collect rents, manage and maintain the property during the pendency of the deficiency action in Superior Court—an equitable remedy to which the Ingrams agreed in order to receive funding secured by a mortgage and which they triggered by their default on their promise to repay.

**7.** The Ingrams argue that the failure of Dover Associates to dispose of the property in a commercially reasonable manner is an "absolute bar" to its recovery of a deficiency. *Wilmington Trust v. Conner,* Del.Supr., 415 A.2d 773 (1980). I address this argument in a footnote because it is neither applicable to this case nor bears on this Court's decision to appoint a receiver *pendente lite.* In *Wilmington Trust v. Conner,* the Supreme Court reversed the judgment of the Superior Court and barred the secured creditor from obtaining a deficiency judgment in an automobile repossession case because they failed to provide "reasonable notification" to the debtor of the disposition of collateral. *Id.* The "absolute bar" theory is instigated by a creditor's failure to comply with notice provisions. This holding does not apply here. Dover Associates foreclosed on the property and now seeks a deficiency judgment. The Superior Court may conclude that Dover Associates alleged failure to dispose of the property in a commercially reasonable manner affects a deficiency judgment. However, there are no notice requirement issues apparent in this case necessitating the application of the "absolute bar" theory. Accordingly, I find no merit in the theory proffered by the Ingrams.

**8.** *Moore v. Associated Producing & Refining Corp.,* Del.Ch., 121 A. 655, 656 (1923) (citing *Gray v. Newark,* Del.Ch., 79 A. 735, 739 (1911)).

**9.** *Beal Bank, SSB v. Lucks,* Del.Ch., C.A. No. 14896, mem. op., Steele, V.C., 1998 WL 778362 (Oct. 23, 1998). In *Beal,* the appointment of a receiver as a remedy to assure payment of rents was not provided for by contract, as is the case here.

**10.** *See The Estate of Magaral,* Del.Ch., No. 81150, Brown, C. (Oct. 18.1984) (despite the unjust circumstances that would result, Chancellor Brown applied the maxim "equity follows the law" to determine the persons who would take from the decedent's estate).

**11.** 30A C.J.S. Equity § 93 at 289.

**12.** Unless, of course, they or an entity they control seeks to avoid paying rent. That might explain their opposition to this order—a "harm" equity could not favor.

Therefore, Dover Associates' petition for appointment of a receiver *pendente lite* is **granted** with the following conditions:

(1) The receiver will collect the rents, manage and maintain the property;

(2) The amounts collected after expenses to defray the costs of managing and maintaining the subject property must be placed in escrow pending the outcome of the litigation in Superior Court;

(3) The receiver must render an accounting at the end of the receivership with the balance to be applied to the judgment at the end of the Superior Court proceedings, if there be one;

(4) Petitioner Dover Associates is to submit an Order to this Court consistent with these findings of fact and conclusions of law.