**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: October 27, 2023
Final Report: October 30, 2023

Stephen A. Spence, Esquire
Meluney Alleman & Spence, LLC
1143 Savannah Rd., Suite 3-A
Lewes, Delaware 19958

Daniel C. Herr, Esquire
Law Office of Daniel C. Herr LLC
1225 N. King St., Suite 1000
Wilmington, Delaware 19801

RE:     *Schell Brothers, LLC v. Pickard*,
         C.A. No. 2022-0642-BWD

Dear Counsel:

In this action, Schell Brothers, LLC ("Schell Brothers") and Reddenwood II (together, "Petitioners") seek to enforce an addendum to a purchase agreement through which Shawn and Lori Pickard ("Respondents") agreed to purchase, and Petitioners agreed to sell, a new construction home in Milton, Delaware. The addendum entitled Mr. Pickard, as a Schell Brothers employee, to an employee discount on the purchase price of the home. To retain that discount, however, the addendum required that Pickard remain employed by Schell Brothers for three years following the issuance of the home's certificate of occupancy. Respondents agreed that if they failed to repay the discount within thirty days of Pickard's termination, they would list the home for sale and, subject to Schell Brothers' first option to

purchase the home, use the proceeds of a sale to reimburse Petitioners the amount of the discount.

Pickard was terminated from Schell Brothers less than three years after the certificate of occupancy was issued. Respondents did not repay the employee discount, and Petitioners initiated this action to enforce the purchase agreement addendum. On March 21, 2023, I issued a final report denying Respondents' motion to dismiss on the grounds that the addendum was illusory and unenforceable, holding that the purchase agreement (including the addendum) was a valid and binding contract.[1]

Petitioners now seek summary judgment on their claim for breach of contract and an award of specific performance. The March 21, 2023 final report determined that the addendum is valid and binding, and Petitioners undisputedly stand ready and willing to perform. In this final report, I conclude that the balance of the equities also favors an award of specific performance. Respondents no longer reside in the home and do not claim that an order of specific performance would harm them in any way; the parties contractually agreed that Petitioners are entitled to specific performance; and even if they had not, remedies available at law would not afford

---

[1] *See Schell Bros., LLC v. Pickard*, 2023 WL 2581711 (Del. Ch. Mar. 21, 2023).

Petitioners full, fair, and complete relief. Accordingly, I recommend that the Court grant Petitioners' motion for summary judgment and order Respondents to specifically perform their obligations under the purchase agreement and addendum.

## I.     FACTUAL BACKGROUND

The following facts are undisputed. Petitioner Schell Brothers, a Delaware limited liability company, is a homebuilding company based in Rehoboth Beach, Delaware. As a tool to recruit and retain employees, Schell Brothers offers employees an "Employee Discount" toward the purchase of a new construction home. In July 2019, Schell Brothers hired Respondent Shawn D. Pickard as a pilot for its corporate aircraft. Schell Brothers offered Pickard, as a new employee, the opportunity to apply the Employee Discount toward the purchase of a new construction home.

On July 1, 2019, Pickard and his wife, Respondent Lori D. Pickard, signed a Delaware Purchase Agreement (the "Purchase Agreement"), pursuant to which the Pickards agreed to purchase a new construction home in the Estates at Reddenwood Community in Milton, Delaware (the "Property"). Am. Pet., Ex. A [hereinafter, "Purchase Agreement"], Dkt. No. 12. Contemporaneous with the Purchase Agreement, the Pickards signed an addendum (the "Employee Addendum"), which states that to be eligible for an Employee Discount, the Pickards "must use the Home

as [their] primary residence." Am. Pet., Ex. B [hereinafter, "Employee Addendum"]

¶ 5. The Employee Addendum also provides that, "[s]hould [Pickard] voluntarily

cease employment with Schell Brothers or be terminated within 3 years of the date

a certificate of occupancy is issued for the Home," the Pickards must reimburse the

Employee Discount. *Id*. ¶ 7. Additionally,

> In the event that Employee/Buyer does not reimburse Schell Brothers the full amount of the Employee Discount within 30 days, ***Employee/Buyer agrees to put the Home on the market for sale within 60 days*** of the date Employee/Buyer ceases to be employed with Schell Brothers. Employee/Buyer shall notify Schell Brothers 15 days prior to listing or otherwise offering the Home for Sale. ***Schell Brothers has the first option to purchase the Home*** from the Employee/Buyer at the original cost calculated as the total "Sales Price" of the Home and/or lot as shown on the HUD1/ALTA documents. Should Schell Brothers choose not to exercise its right, Employee/Buyer shall notify Schell Brothers of the date on which the Home is listed or otherwise offered for sale. Employee/Buyer shall provide Schell Brothers with the ratified agreement of sale and ***use the proceeds of the sale to reimburse Schell Brothers the full amount of the Employee Discount*** within 30 days of the date of the sale. If the proceeds from the sale of the Home are insufficient to fully reimburse Schell Brothers for the Employee Discount, Employee/Buyer shall still be obligated to reimburse Schell Brothers for the difference between the full amount of the Employee Discount and the amount provided to Schell Brothers from the sale of the Home.

*Id*. (emphasis added).

A certificate of occupancy was issued for the Property on May 28, 2020. Am.

Pet., Ex. G. Less than three years later, on January 24, 2022, Schell Brothers

terminated Pickard's employment, purportedly for cause. Following Mr. Pickard's termination, Schell Brothers notified Respondents that, pursuant to the Employee Addendum, Respondents were required to reimburse Schell Brothers for the full amount of the Employee Discount—$237,812.00—within thirty days of termination or put the Property on the market within sixty days of termination. Am. Pet., Ex. J. When the Pickards failed to do so, Petitioners initiated this litigation, seeking, among other things, a declaration that Respondents breached the Employee Addendum, specific performance, and an equitable lien on the Property in the amount of the Employee Discount. Dkt. No. 1.

Respondents then moved to dismiss, arguing that the Purchase Agreement and the Employee Addendum must be viewed as separate agreements, and the Employee Addendum, standing alone, is an "illusory" contract unsupported by consideration. Dkt. No. 11. On March 21, 2023, I issued a final report (the "March 21 Final Report") recommending that the Court deny Respondents' motion to dismiss, finding that the Purchase Agreement and the Employee Addendum are part of the same integrated agreement, are not illusory and are supported by consideration. Dkt. No. 24.

On May 31, 2023, Petitioners moved for summary judgment on their claim for breach of contract and request for specific performance (the "Motion"). Pet'rs'

Mot. for Summ. J. On Count I [hereinafter, the "Mot."], Dkt. No. 27.  On July 20, 2023, Respondents filed an opposition to the Motion, as well as motions to dismiss for lack of subject matter jurisdiction and to lift the *lis pendens* on the Property. Resp'ts' Response In Opp'n To Pet'rs' Mot., Resp'ts' Mot. To Dismiss, & Resp'ts' Mot. to Lift the *Lis Pendens* [hereinafter, "Resp'ts' Opp'n"], Dkt. No. 31.[2]

## II.    ANALYSIS

Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ct. Ch. R. 56(c).  Under Court of Chancery Rule 56, "[t]he movants have the initial burden of demonstrating the absence of a material factual dispute.  If the movants meet their burden, the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial."  *Ogus v. SportTechie, Inc*., 2023 WL 2746333, at *9 (Del. Ch. Apr. 3, 2023) (footnote and internal quotation marks omitted).  At that point, "an adverse party may not rest upon

---

[2] On August 18, 2023, Petitioners filed a combined reply in further support of the Motion and opposition to Respondents' motions.  Pet'rs' Reply In Supp. Of Their Mot. For Summ. J. On Count I & Opp'n To Resp'ts' Mot. To Dismiss and Lift *Lis Pendens* [hereinafter, "Pet'rs' Reply"], Dkt. No. 34.  On September 25, 2023, Respondents filed their sur-reply in support of their motions to dismiss and to lift the *lis pendens*. Resp'ts' Reply In Further Supp. Of Mot. To Dismiss Pursuant To R. 12(h)(3) & Mot. To Lift *Lis Pendens* [hereinafter, "Sur-Reply"], Dkt. No. 37.

the mere allegations or denials of the adverse party's pleading . . . ." Ct. Ch. R. 56(e).

Petitioners move for summary judgment on Count I of their Verified Amended Petition, which claims that Respondents breached the Employee Addendum and seeks to enforce the Employee Addendum through an order of specific performance requiring the Pickards to list and sell the Property, subject to Schell Brothers' first option to purchase the Property, to generate sufficient funds to reimburse Petitioners the full Employee Discount. Mot. at 7; Pet'rs' Reply at 1. "Specific performance for the transfer of real property is an extraordinary remedy," not to be awarded "lightly." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). To establish entitlement to specific performance, the party seeking specific performance must demonstrate by clear and convincing evidence that "(1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance." *Id*. Specific performance is available only if there is no adequate remedy at law. *Id*.

The March 21 Final Report determined that the parties entered a valid contract. In opposing the Motion, Respondents do not dispute the validity of the Employee Addendum, or that Petitioners are ready, willing, and able to perform thereunder. Resp'ts' Opp'n at 2. Instead, Respondents contend that the balance of

the equities disfavors an award of specific performance, and that Petitioners have an adequate remedy at law. *Id*. at 5-6.

"In balancing the equities for specific performance, the Court must consider whether 'specific enforcement of a validly formed contract would cause even greater harm than it would prevent.'" *Hastings Funeral Home, Inc. v. Hastings*, 2022 WL 16921785, at *8 (Del. Ch. Nov. 14, 2022) (citation omitted). Here, the undisputed record demonstrates that specific enforcement of the Employee Addendum would prevent greater harm to Petitioners than it would impose on Respondents. The Pickards admit that they no longer reside at the Property,[3] and do not claim that an order of specific performance would harm them in any way. On the other hand, in the absence of specific performance, Petitioners will lose the benefit of their bargain under the contract. As Petitioners note, "Schell specifically bargained for the right to compel the listing and sale of the Property to generate funds to allow the Pickards

---

[3] For this reason, this case bears no resemblance to *Morabito v. Harris*, where the Court found that "[s]pecific performance of the contract w[ould] equate to homelessness for the [defendants]." 2002 WL 550117, at *3 (Del. Ch. Mar. 26, 2002).

to pay back the employee discount if they breached the [Employee] Addendum." Mot. at 9.[4]

Respondents argue that Petitioners have a sufficient remedy at law because they can pursue a money damages award and initiate foreclosure proceedings in Superior Court. *See* Resp'ts' Opp'n at 4 (arguing that "an award of $239,707.00 would provide Petitioner complete justice regarding their claims" and "Petitioners may take advantage of post-judgment execution remedies (at law) such as imposing a lien on Respondents' real property and causing a sheriff sale of the same").

I disagree that remedies available at law are adequate to afford Petitioners "full, fair and complete" relief. *United BioSource v. Bracket Hldg. Corp.*, 2017 WL 2256618, at *4 ("To be adequate, 'a legal remedy must be available as a matter of right, be full, fair and complete, and be as practical to the ends of justice and to prompt administration as the remedy in equity.'" (quoting *Clark v. Teeven Hldg. Co., Inc.*, 625 A.2d 869, 881 (Del. Ch. 1992))). First, the parties agreed in the Employee Addendum that "[i]f [Respondents] [are] required to sell the Home and refuse[] to do so within the prescribed time period, [Petitioners] . . . shall be entitled

---

[4] Respondents contend that the balance of the equities tips against Petitioners because they own a corporate aircraft. Resp'ts' Opp'n at 6. I am aware of no authority factoring plane ownership into the balance of the equities.

to specific performance and/or injunctive relief." Employee Addendum ¶ 7. "Where parties have expressed their expectations through a specific contractual remedy, Delaware law favors enforcing that remedy." *In re Cellular Tel. P'ship Litig.*, 2021 WL 4438046, at *72 (Del. Ch. Sept. 28, 2021); *see also, e.g.*, *Gildor v. Optical Sols., Inc.*, 2006 WL 4782348, at *11 (Del. Ch. June 5, 2006) ("Delaware courts do not lightly trump the freedom to contract and, in the absence of some countervailing public policy interest, courts should respect the parties' bargain."); *Dover Assocs. Joint Venture v. Ingram*, 768 A.2d 971, 973-74 (Del. Ch. 2000) (granting "an equitable remedy to which the [defendants] agreed" where "the parties bargained for this remedy in the event of default," explaining that "[e]quity must follow the law whenever the rights of the parties are clearly defined and established by a legal, contractual right"). The parties bargained for Petitioners' right to specific performance in the event of breach. Delaware law favors enforcing that right.

Second, under the Employee Addendum, "Schell Brothers has the first option to purchase the Home" before it is listed for sale. Employee Addendum ¶ 7. A money damages award would not preserve that option. *See Morris v. Martin*, 1996 WL 757279, at *4 (Del. Ch. Dec. 30, 1996) (specifically enforcing a "valid and legally effective" right of first refusal).

And third, even if Petitioners elect not to exercise their right of first refusal, Petitioners specifically bargained for the contractual right to compel the Pickards to list and sell the Property to recoup the Employee Discount. Petitioners explain that a foreclosure proceeding would not provide an adequate remedy because "sheriff's sales rarely result in the winning bid paying close to market price," and "[a]ny judgment obtained by Petitioners would be junior to [a first] mortgage, so a sale pursuant to that judgment would be subject to the buyer assuming the mortgage, further lessening the chance that a sheriff's sale would produce proceeds sufficient to pay back the Employee Discount." Pet'rs' Reply at 13 n.5. In response, Respondents urge that the Court must hold an evidentiary hearing to determine whether a sheriff's sale would, in fact, generate insufficient proceeds. I disagree. Petitioners bargained for a list-and-sell process because they believed that procedure, compared to other remedies, would likely maximize proceeds to ensure the Employee Discount could be repaid. Petitioners' right to pursue their preferred procedure is itself a "bargained-for benefit that money cannot adequately compensate." *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 437 (Del. Ch. 2007).[5]

---

[5] Respondents also contend that Petitioners cannot demonstrate "irreparable harm" because they waited five months after demanding repayment of the Employee Discount to file this

To summarize, Petitioners have established their entitlement to an award of specific performance because the undisputed facts of record demonstrate (1) the existence of a valid contract; (2) Petitioners are ready, willing, and able to perform; and (3) the balance of the equities favors an award of specific performance. Petitioners have also established that they lack an adequate remedy at law. Therefore, summary judgment should be entered in Petitioners' favor on Count I.[6]

---

litigation, and did not seek to expedite the proceedings. Sur-Reply at 5-6. Petitioners' purported delay in filing suit does not render an award of money damages an adequate remedy.

[6] Separately, Respondents move to dismiss for lack of subject matter jurisdiction. This Court maintains subject matter jurisdiction over complaints requesting equitable remedies when there is no adequate remedy at law. *Smith v. Scott*, 2021 WL 1592463, at *14 (Del. Ch. Apr. 23, 2021). Because I have concluded that Petitioners are entitled to equitable relief, Respondents' motion to dismiss should be denied. Respondents also move to lift the *lis pendens* on the Property because "the claim relating to the real estate is one which, if sustained, would entitle the party solely to recover money or money damages." 25 *Del. C.* § 1606(3). Because Petitioners are entitled to equitable relief in the form of specific performance, that motion also should be denied.

## III.   CONCLUSION

For the reasons explained above, I recommend that the Motion be granted.

This is a final report pursuant to Court of Chancery Rule 144(d)(1).[7]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:     All counsel of record (by File & ServeXpress)

---

[7] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").